JOE KEMMERLING ET AL. v. KARL KOCH ERECTING COMPANY, INC., and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellants. —89 S. W. (2d) 674.

Division Two, January 4, 1936.

*Wm. R. Schneider* for appellants.

*Foristel, Mudd, Blair & Habenicht* for respondents.

WESTHUES, C.—Respondents filed a claim before the Missouri Compensation Commission seeking an award for the death of Henry Kemmerling. The commission made an award of no compensation. Respondents appealed and the circuit court reversed the order of commission. Appellants appealed from the judgment of the circuit court. This being a death claim, and the amount in dispute exceeding $7500, the appellate jurisdiction is in this court.

The sole controverted question before the Compensation Commission was, whether the claimants, respondents here, were dependents of Henry Kemmerling, deceased. Henry Kemmerling had been married three times. He had one son, who was of age and was not dependent upon his father. This son made no claim. Kemmerling was divorced and his former mates did not file a claim for compensation. Respondents, claimants, are: "Kate Ostmann, sister; Marie Ostmann, niece; Joseph Ostmann, nephew; Gertrude Ostmann, niece; Henry Ostmann, brother-in-law; John J. Kemmerling, brother; Joseph Kemmerling, brother; Arthur Kemmerling, nephew; Warren Kemmerling, nephew; Elizabeth Kemmerling, sister-in-law."

The evidence disclosed that for more than a year prior to his death Kemmerling had lived with the family of Henry Ostmann. The members of this family testified that deceased always gave his wages to his sister, Mrs. Ostmann, and that the money was used to buy supplies for the entire family. The Ostmann family had other income. The children were employed, as well as the father who had been working for a number of years at the City Water Department. The father also received money from the United States Government. A short time before Kemmerling's death Ostmann bought a small farm in St. Louis County. The Ostmann home in the city was used as a part of the purchase price. Appellants introduced as a witness an employee of the insurance company who had investigated the death of Kemmerling. This witness testified as follows:

"Q. Kindly tell us what she said to you in the course of your investigation. A. She told me that she was a sister of the deceased; that she was the only sister, and that there was two brothers, one named John and one named Joe, and she also said that the deceased had stayed with her for about two years at the address on, I believe it is 5064 or 5 Claxton avenue. She also said that she knew very little about his personal affairs, but that he had been married several times, and that she knew the name of one whom she thought was his last wife, and that that woman's name was Nellie—she didn't know her last name. She said she had clothed and fed this boy (the deceased) during that two years he had stayed with them, and that she thought if there was anybody entitled to any money as a result of his death that she was the one that ought to be entitled to it, for that very reason, that she clothed and fed him."

It was shown that deceased did not have steady employment. In fact it was hard to determine from the evidence just how much of the time he was employed. He was an iron worker and when engaged in his occupation earned $1.47 per hour. The witnesses testifying in behalf of this claim were principally the members of the Ostmann family. Their evidence was very uncertain as to any details connected with the financial aid received from deceased. When questioned on cross-examination they displayed a disposition to give evasive answers. The most flagrant of these was in the cross-examination of witness Henry Ostmann. To illustrate we quote a part of the cross-examination:

"Q. How long had you and your wife held this deed of trust for $1000.00? A. Oh, I don't know. I don't see where that's anybody's business.

"The REFEREE: That may be stricken.

"A. I have been sitting here all day answering silly questions and all day yesterday.

"The REFEREE: Answer the questions and we will get along nicely.

"Q. When did you and your wife purchase that deed of trust and from whom? A. I don't know. I am human. I can only stand so much.

"Q. When did you pay over this $1500.00 for the trade on the property on Chambers? A. I don't remember.

"Q. Who did you do business with? A. I am done. I may be ignorant but I ain't no fool. You will have to excuse me. I will have to get out in the air for a while. I am shaking all over."

Other claimants introduced evidence that deceased had at various times lived with them and during those times had aided them in a financial way. The deceased had not lived with any of these claimants for more than a year prior to his death.

The word "dependent" is defined by Section 3319, Revised Statutes 1929 (Mo. Stat. Ann., p. 8255), as follows:

"The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury."

The Compensation Commission was authorized to find that none of the claimants were dependent upon deceased at the time of the injury which resulted in his death, or that claimants received aid from deceased in the way of support as that term is ordinarily understood. Deceased did not pay for his board and evidently made contributions to the various claimants while he lived with them to compensate them for the expense of keeping him. The evidence justifies such a conclusion.

The burden of proof was upon claimants to establish the fact

that they were dependents of deceased at the time of the injury. The evidence disclosed that each of the families, making claim for compensation, possessed more property than deceased. There is no evidence in the record that deceased paid more to the Ostmann family than would have been reasonable for board and room. He had not aided any of the other claimants for more than a year before his death and then only when he would stay in their homes.

The question of dependency is a question of fact. [Glaze v. Hart, 225 Mo. App. 1205, 36 S. W. (2d) 684; Gessler v. Liggett & Myers Tobacco Co., 54 S. W. (2d) 806.] A finding by the Compensation Commission, based upon substantial evidence, is binding upon appellate courts. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601; Decker v. Raymond Concrete Pile Co., 336 Mo. 1116, 82 S. W. (2d) 267.] It must be remembered that in this case dependency was not presumed because of the relationship existing between the parties, but the claimants were required to prove such fact to justify the commission in making an award in their favor. An award of no compensation may be made in such cases for a lack of evidence to establish dependency, while an award of compensation must be supported by substantial evidence. We, therefore, hold that the finding of the Compensation Commission that claimants were not dependents of deceased as defined in the Compensation Law was authorized by the evidence.

█ It is also contended that the commission failed to make an award to claimant, Joe Kemmerling, for burial expenses. We desire to quote from the record the only evidence upon this question, as given by the claimant.

"Q. Who paid Henry Kemmerling's funeral bill? A. I paid the undertaker.

"Q. Where did you get the money with which to pay the bill? A. He had a benefit due from the organization of the local. That was paid to me, $400.00. The funeral bill, I think was $385.00."

It is evident that the funeral expenses were not paid by the claimant and therefore the Compensation Commission was not authorized to make an award in his favor. Section 3319, Revised Statutes 1929 (Mo. Stat. Ann., p. 8254), authorizes the commission to make an award for funeral expenses only to such persons as have furnished the same by authority of the nearest relative. Joe Kemmerling in this case did not furnish or provide with his own means for the expense of the funeral. It is, therefore, ordered that the judgment of the circuit court be reversed and the cause remanded with directions to the circuit court to approve the award of the commission. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.