CLIFFORD E. WATSON, EMPLOYEE, v. MARSHALL'S U. S. AUTO SUPPLY, INC., EMPLOYER AND MARYLAND CASUALTY COMPANY, A CORPORATION, INSURER.—186 S. W. (2d) 556.

Kansas City Court of Appeals. January 22, 1945.

1220

*James D. Reeves, Watson, Ess, Groner, Barnett & Whittaker, Carl E. Enggas* and *Douglas Stripp* for appellants.

*Leo T. Schwartz* for respondent.

*R. S. McKenzie* of counsel.

DEW, J.—Respondent made claim before the Missouri Workmen's Compensation Commission for award of damages alleged to have been sustained while in the course of his employment by appellant Marshall's U. S. Auto Supply Company, Inc. On the first hearing the Commission granted the respondent compensation. Upon later review by the full Commission, compensation was denied and the Commission found that the condition complained of was not the result of an accident arising out of and in the course of the respondent's employment, one member of the Commission dissenting. From the latter action of the Commission respondent appealed to the Circuit Court, which reversed the said final award of the Commission denying compensation, set the same aside, and ordered the cause remanded to said Commission. From such judgment of the Circuit Court appellants appealed to this court.

There is no dispute as to the material facts. All the evidence in the hearing was supplied by respondent and his witnesses, except two witnesses for appellants as to distance and locations. The facts, in substance, are as follows:

Respondent and the appellant Marshall's U. S. Auto Supply Company, a corporation, on April 18, 1942, were respectively employee and major employer, both working and operating under the Missouri Workmen's Compensation Law. The employer's liability under said Compensation Law was insured by appellant Maryland Casualty Company.

At the time of the accident respondent was employed as a supervisor by appellant Supply Company, checking up and inspecting his employer's several stores in and about Kansas City. A part of his duties was the collection of accounts. For such collection work he used his own automobile, or that of someone else when his car was not available. When out in the territory on the job of collecting or adjusting accounts he had no fixed hours, no directions as to routes of travel, no specified time or place for meals. As to these matters he was permitted to and did use his own discretion. The employer always paid for his meals and other expenses when he was on outside work.

On the day in question respondent was working out of the Independence, Missouri, store of his said employer. He was told about noon to collect the account of one Drake in Kansas City. Respondent's car was in a garage for repairs. He called Mr. Eichenberger, a friend, who consented to take respondent to Kansas City in Eichenberger's car to contact the debtor Drake. They drove directly to Kansas City over 15th Street, and to Drake's place of employment. Finding the place closed, they then drove to the neighborhood of Drake's place of residence in Kansas City, searched for Drake's car and for the tires

for which respondent sought payment, and finally found Drake, with whom the account in question was discussed.

It was then between 5:00 and 5:30 P. M., and it was respondent's duty to return to and report at his employer's store at Independence before it closed, and to turn in some money belonging to the company in his possession. Respondent had no other collections to attend to at the time. Eichenberger then, with respondent still with him, started back toward Independence by way of 15th Street, as they had come. Upon reaching the city limits of Kansas City, respondent realized that he had had no lunch that day and offered to buy sandwiches for both if Eichenberger would stop for same. Eichenberger stated that there was no place "along here" to get anything, and suggested the B-B Lodge, saying that it was "right on the way." There were eating places eastward along 15th Street between Centropolis and Independence, but Eichenberger considered them undesirable. Eichenberger turned off 15th Street at Blue Ridge Road and drove south 2.6 miles to the B-B Lodge. There they ate several sandwiches, had coffee, respondent telephoned his wife not to wait to meet him in Kansas City, telephoned the garage regarding his car, and between times they played the marble machine in the place, and drank a bottle of beer, all this consuming about 45 minutes at the said eating place. The whole time consumed between leaving 15th Street and leaving the lodge did not exceed one hour.

Leaving the luncheon place, Eichenberger then drove south on Blue Ridge Cut Off, which, two and a half miles south, intersects Old Highway 40, which leads eastward to Noland Road, which latter road runs directly northward into Independence. Eichenberger stated that he wanted to pay a man some money at the intersection of Old Highway 40, and that it would not "take more than a minute." Respondent reminded Eichenberger that respondent "had to get back to the Independence store before closing time." Eichenberger explained that he could get to Independence as quickly by that route as over the shorter routes because of traffic and signal stops. He further explained that he would "Go down and cut in on Noland," avoiding stop lights on the other routes. There were two or three shorter routes to Independence. As they proceeded south from the Lodge, they were crowded off the highway by another car, and respondent there sustained his injuries.

Had respondent and Eichenberger continued on 15th Street instead of turning off south to the B-B Lodge, the distance from the point where they turned off to the Independence store would have been 3.8 miles. From the B-B Lodge back to the store at Independence by the original route would have been about 6.4 miles. To return to the store from the B-B Lodge by 23rd Street would have been 5.1 miles. By New Highway 40 to Noland Road, thence to Independence would be 7.5 miles. The route over Old 40 to Noland Road and thence to

Independence as selected by Eichenberger, would have been about 8 miles; in other words, approximately, the distance from the luncheon place to the Independence store was one-half mile further than one route, 1.6 miles further than another, and 3.9 miles further than a third.

The final award of the Commission, denying compensation, contained but one finding, and that was that "the condition complained of by the employee is not the result of an accident arising out of and in the course of his employment."

Appellants urge two ponits, to-wit: First, that the question whether or not the accident arose out of and in the course of respondent's employment is a question of fact, the award being in the nature of a special verdict of a jury; that there were disputes in the evidence, different inferences to be drawn therefrom, and therefore the finding of the Commission was conclusive, if supported by substantial, competent evidence; second, that said award was supported by substantial, competent evidence.

The scope of an appeal from an award of the Missouri Workmen's Compensation Commission is fixed by Section 3732, Revised Statutes Missouri, 1939. It provides, in part, as follows:

". . . Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing or set aside the award upon any of the following grounds and no other: . . .

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the award. . . ."

As to the question whether an accident arose out of and in the course of the employment, the Supreme Court said in Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, 604:

"That there was an accident, as defined by the act, and that it arose out of and in the course of the employment, were findings of fact, and not conclusions of law; they were ultimate facts, and, with the other constitutive facts found or admitted, afforded a sufficient basis under section 3 of the act (section 3301, R. S. 1929) for an award of compensation.

. . . .

"The findings are in the nature of a special verdict, and as such are binding and conclusive, if supported by any substantial competent evidence. Whether they are so supported is one of the questions of law calling for decision on this record."

A further construction of this statute by the Supreme Court appears in Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909, 913:

"It is the well-settled rule of practice that in the consideration of the commission's findings with a view to determining the competency and substantiality of the evidence to support the award, we regard the findings of fact as being of the nature of a special verdict, and if the evidence is conflicting and there is yet substantial competent testimony which, if believed, supports the finding of the commission, the same will be affirmed. Leilich v. Motor Co., *supra*, and many other cases needless to cite."

And at page 915 (S. W. (2d) the court further said:

"In the evidence so fully stated above there are, manifestly, no conflicts. In the nature of the case there could not well be, for in its essentials the testimony all came from the mouths of the employers themselves. In this state of the record the applicable rule of procedure is that where the evidence is undisputed, or agreed, and is reasonably susceptible of but a single inference of what relationship is shown to exist between an employer and an alleged employee, the question for determination is one of law, irrespective, as shown herein above, of whether it was of law or of fact, as presented to the commision below. Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, 87 A. L. R. 953; Sawtell v. Stern Bros. & Co., 226 Mo. App. 485, 44 S. W. (2d) 264; Baker v. Milling Co., 323 Mo. 1089; 20 S. W. (2d) 494; 28 R. C. L., Sec. 57, p. 763, at bottom."

The Supreme Court in Ulman v. Chevrolet-St. Louis Division of General Motors Corporation, 349 Mo. 906, 163 S. W. (2d) 778, 1. c. 779, reiterated its holding in the Leilich case, *supra,* and distinguished therefrom the Maltz case, *supra,* and other cases therein cited, wherein the evidence was undisputed. The Court said in the Ulman case, 163 S. W. (2d) 1. c. 779:

"Claimants cite Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909, and Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, 87 A. L. R. 953, to the issue that the Commission erred in finding they failed to prove an accident arising out of and in the course of Mr. Ulman's employment. These cases do not establish error here, principally because the evidence there under consideration with respect to the factual issues involved consisted of admissions against interest by the employers and was undisputed."

This leaves the situation such that the finding of the Commission that the accident did not arise out of or in the course of employment is a matter of law, which can be reviewed on appeal, if the evidence is undisputed and only one reasonable inference on the question can be drawn therefrom.

As stated, we hold that in this case the evidence on all material facts was undisputed. As to whether only one *reasonable* inference

can be drawn therefrom, we now consider that question, together with the substantiality of the evidence.

Respondent left his employer's store in Independence under orders of his employer to collect the Drake account in Kansas City. His own car being laid up for repairs, and no other car being available, he asked and obtained of his friend Eichenberger the accommodation of driving respondent in Eichenberger's car on respondent's errand above noted. Practically all of the afternoon was consumed in attending strictly to the Drake matter, made possible by the time and transportation graciously supplied by Eichenberger. After 5 :00 P. M., respondent, not yet having had any lunch, offered to buy sandwiches for both if Eichenberger would stop for them. While working thus in the field, respondent was not restricted as to when nor where he ate his meals, and all such expenses were paid by the employer. Eichenberger, not considering the eating places nearby desirable, suggested that they drive to the B-B Lodge, 2.6 miles south on Blue Ridge Road, which they did, and they spent about 45 minutes at lunch and a few minutes telephoning and playing the marble game. No more than an hour was spent from the time they turned off 15th Street until they left the luncheon place.

When leaving the lodge, Eichenberger drove toward Old Highway 40, which was 2.5 miles south and which ran east, where it connected with Noland Road, which latter highway led northward directly into Independence. Respondent suggested that he had to get to the store before it closed to turn over some money of the company, which he had in his possession. Eichenberger explained that on the way back to Independence, and at the intersection of Old Highway 40, he desired to leave some money with someone, and that it would take only a minute or so, and that they could get back to Independence as quickly by that route as by the shorter routes, where traffic was heavier and signal lights more frequent. There was no public transportation available from the eating place back to Independence. Nothing further was said about the route taken, and shortly thereafter the accident occurred.

Had one of the shorter routes from the B-B Lodge to Independence been selected, from 1.5 to 3.9 miles would have been saved, which at moderate speed of 35 miles per hour would probably have consumed from three to twelve minutes longer. Had they continued on 15th Street, the mileage saved might have been a little more than 5.2 miles or about twelve minutes in time.

As to respondent's meals during the work day, we find no other reasonable inference in the evidence than that, while out on the territory on his employer's business, he was authorized to stop and obtain his lunch or other meal, at his employer's expense, at such hour as he might choose, and at such place most satisfactory to him within convenient distance from his location at the time; that while so doing he

was not abandoning his course of employment; that he was therefore still engaged in said course of employment when, at 5:00 P. M., en-route back to his employer's place of business, after going all day without lunch, he consumed four or five minutes in going off the highway on to another to an eating place recommended by his accommodating friend in whose car they were riding, and there spent 45 minutes at his meal.

As to his return from his eating place to his employer's store, we find from the evidence no other reasonable inference than that respondent's employment permitted him to return by whatever route and by whatever available mode of transportation he might select that would not materially delay his return; that he could use his discretion in those respects, including consideration of traffic, number of signal stops, and incidental advantages as to such routes; that therefore, in view of these considerations and the lack of any public transportation available, and the fact that the car in which he had been traveling all afternoon on his employer's business belonged to and was being driven gratuitously by his friend, and in view of his natural obligation to accede to his benefactor's personal convenience in attending to a little errand of his own, right on one of the available routes back, he could, properly, without abandoning his course of employment, return by a route a few miles longer than others, requiring fifteen or twenty minutes more time. Reasonable human conduct cannot be measured with mathematical exactitude. There is no evidence that in acquiescing in the route taken, respondent was embarking on any personal errand of his own, but was returning to his employer's place of business and completing his assignment in the best way he could under the circumstances.

Holding, as we do, that there is no material dispute as to the facts; that there is only one reasonable inference to be drawn therefrom, namely, that respondent's injury arose out of and in the course of his employment; we further hold that there was no substantial evidence to support the award of the Commission. Accordingly, the judgment of the Circuit Court should be affirmed. It is so ordered. All concur.