478

JONES *v.* CORDER.

(*Jackson,* April Term, 1954.)

Opinion filed May 21, 1954.

HOLMES & HOLMES, of Trenton, for plaintiff in error.

J. FRANK WARMATH and G. GRIFFIN BOYTE, both of Humboldt, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

Mrs. A. T. Corder, as next friend of Thomas Jerry Corder, filed her petition to recover compensation for and on behalf of her infant son, Thomas Jerry Corder, for the death of A. T. Corder who was killed in a traffic accident while operating a taxicab for McKinley Jones. We will refer to the parties as they appear in the trial court.

The petitioner at the time of the accident was the divorced wife of the deceased. The infant son, Thomas Jerry, was the only child of petitioner and deceased. The defendant owned and operated a restaurant and taxicab service in the town of Trenton, Tennessee, the deceased being employed as a taxicab driver. He was operating a cab at the time he had an accident in which he lost his life.

The petition alleges all of the foregoing facts, and that the defendant in the prosecution of his business "hired and employed more than an everage number of five persons." There was a prayer for an award as "required under and by virtue of the Workmen's Compensation Act".

The only defense to the petition was that the injury and death of the said A. T. Corder did not arise out of and in the course of his employment. The defendant avers

that the said A. T. Corder, at the time he was injured, was on a mission of his own, which had no connection whatever with defendant or his business.

When the case came on for trial the defendant sought to prove that he did not have as many as five persons regularly employed in his taxicab business. His taxicab office was in the restaurant, and it is conceded that he had nine persons employed in the restaurant ·and four taxicab drivers.

The trial judge sustained the petition and awarded compensation to which there was no exception taken as to the amount of the award.

The assignments of error complain (1) that it was error to hold that the defendant was subject to the Workmen's Compensation Law, Code, Sec. 6851 et seq., because he "never had as many as five employees in the operation of his business"; and (2) it was error to hold that the deceased "was acting within the scope of his employment."

■ We pretermit the first assignment because it was not made an issue by the defendant's answer to the petition. In *Sears-Roebuck & Co.* v. *Starnes*, 160 Tenn. 504, 507, 26 S. W. (2d) 128, 129, it is held:

"Moreover, since a suit under our Compensation Statute follows the course of equity, a defendant cannot avail himself of any matter of special defense not stated in his answer, even though it should appear in the evidence. 1 Dan. Ch. Pr. 712. *Turley* v. *Turley,* 85 Tenn. [251] 261 [1 Pick. 251, 261], 1 S. W. 891."

■ In support of the second assignment contention is made that the deceased, at the time of the accident, was on his way to the home of a girl friend, his object being to

take her on a pleasure trip to Nashville. There is some evidence to the effect that on out of town trips, such as a trip to Nashville, Tennessee, the defendant required a regular driver to take along with him a "spare driver", and to notify the defendant of his intention to make such a trip. The defendant's counsel earnestly contends that the deceased concealed the fact from his employer that he intended to take his young lady friend to Nashville. But this is not a matter of such material importance as to affect the issue of liability.

We think the testimony of James McNeely establishes the fact that the deceased had agreed to drive him to Nashville and he was to share the cost of the trip with another person. McNeely did not know who that other person was. The total fare for one person making the trip was $47. The record shows the following:

"Q. I will ask you to state if you made any arrangements with anybody to go anywhere that night? A. Yes, sir. Tommie Corder was to carry me to Nashville that night.

"Q. For whom was Tommie Corder working at that time? A. Mr. Jones.

"Q. Jones Taxicab Company? A. Yes, sir.

\* \* \* \* \* \*

"Q. Who was to take you to Nashville? A. Tommy, Tommy Corder.

"Q. Tommy Corder? A. Yes, sir.

"Q. How was he to take you? A. In a taxi.

"Q. Whose taxi? A. Mr. Jones'.

"Q. Where was you, where was the taxicab to pick you up or you to enter the taxi cab? A. At Mrs. Mallard's.

"Q. Was that where you were living at that time? A. Yes, sir.

"Q. What time was he to come for you? A. Between six-thirty and seven or between six and seven, somewhere along in there.

"Q. Did he come? A. No, sir." (Tr. pp. 46 and 47).

The deceased was killed before he reached the home of McNeely, who lived with a Mrs. Mallard. The young lady, who was supposed to accompany them lived on the same highway as McNeely, but beyond the latter's home. It appears from the testimony of the young lady, one Martha McKnight, that she had discussed going to Nashville with deceased, but had not definitely decided to do so. She testified as follows:

"Q. Now on that day that he was killed had you seen Tommie Corder? A. Yes, he came to the house that afternoon.

"Q. About what time? A. It was between four and four-thirty.

"Q. For what purpose did he come? A. He came to see if I would like to go to Nashville with him.

"Q. Did he make an appointment about coming back? A. Yes, he did.

"Q. At what time was he to return? A. Between 6:30 and 7. For my answer.

"Q. Did you see him any more that day until you had learned that he had been killed? A. No, I didn't." (Tr. p. 93).

We think the evidence shows, almost beyond dispute, that Corder while acting within the scope of his employment agreed for hire to drive McNeely to Nashville. At the time of the accident Miss McKnight had not advised

the deceased whether or not she would make the trip. We are forced to the conclusion that the deceased was acting within the course of his employment, and the accident arose out of the employment. The mere fact that the deceased concealed from the defendant the fact that he had invited Miss McKnight to go to Nashville would not affect the question of liability. While it is true the deceased was not on a direct route to Nashville he was nevertheless where his duty called him, i. e., driving in a direct route to Mrs. Mallard's where his prospective passenger lived. McNeely was momentarily expecting him, but he never came. The trip, regardless of whether or not Miss McKnight went as a guest of the deceased or as a regular passenger, was beneficial to the defendant. If she was going with deceased on a pleasure trip, it was incidental to the main purpose, i. e., that of transporting a passenger for hire.

We deem it unnecessary to cite cases in support of our conclusion herein expressed. The issue is solely one of fact and there is material evidence to support the judgment of the trial court. The case will be affirmed and remanded to the circuit court for enforcement of the judgment.

LLOYD S. ADAMS, Special Justice, not participating.