BESSIE G. SPRADLING and JEANNE ANN SPRADLING, Appellants, v. INTERNATIONAL SHOE COMPANY, a Corporation, and LIBERTY MUTUAL INSURANCE COMPANY, a Corporation, Respondents, No. 43952—270 S. W. (2d) 28.

Division Two, July 12, 1954.

*Hullverson & Richardson* and *Edward K. Schwartz* for appellants.

940

*Evans & Dixon* and *John F. Evans* for respondents.

BOHLING, C.—This case is under the Workmen's Compensation law. Bessie G. Spradling is the widow and Jeanne Ann Spradling is the minor child of Albert G. Spradling. He was a traveling salesman of International Shoe Company, a corporation. He was killed in an automobile collison. The Liberty Mutual Insurance Company was the employer's insurer. They are referred to as respondents. The referee found that the accident did not arise out of and in the course of the employment and denied compensation. The Industrial Commission reversed the award of the referee and awarded compensation, $150 for burial expenses, and $25 weekly for 480 weeks, $12,000. The circuit court set aside the award of the Commission and entered judgment in favor of the employer and insurer. Claimants prosecute their appeal to

942

this court. Ossery v. Burger-Baird Engraving Co., Mo., 256 S. W. 2d 805[1].

Albert G. Spradling lived with his family in Carbondale, Illinois, where he operated a retail shoe store. The International Shoe Company, a manufacturer and wholesaler of shoes, had a vacancy for a traveling salesman at its Roberts, Johnson and Rand branch in St. Louis, Missouri; and, after some preliminaries, Mr. Spradling, who had had experience, was employed about April 2, 1951. Percy B. Wendt was the sales manager. Mr. Spradling reported to the St. Louis office of his employer April 23, 1951, to familiarize himself with his duties, and began traveling on May 4, 1951. It is agreed he was working under the Missouri Workmen's Compensation law.

The employer, excluding the Chicago area and so far as pertinent here, had divided the State of Illinois along county boundaries into three approximately equal sales territories. Roughly, the lower third of the State was one sales territory, and the upper two thirds of the State was divided by an irregular north-south line. Mr. Spradling was assigned to the above described northeast territory, extending beyond Elgin on the north, and Mattoon on the south. It included Peoria, Bloomington, Lincoln and Decatur, but skirted Springfield, north, east and south by, say, 15 to 20 miles. Carbondale is approximately 100 miles south of the south boundary of the territory assigned to Mr. Spradling.

Mr. Spradling was furnished an automobile by his employer to travel the territory. It was to be used only for company purposes. The rear seat had been taken out and he carried sample shoes, for which he was responsible, of a value between $3,500 and $6000, packed in grips, and other equipment and paraphernalia carried by salesmen, weighing between 1,800 and 2,000 pounds in the automobile. This so filled the automobile that the only available space was for the driver. The family always used Mr. Spradling's personal automobile.

The employer required its traveling men to live within their sales territory and, after discussion, it was agreed for Mr. Spradling to live in Peoria because it was the largest city in his territory and being there would place him in a position to acquire more business. It was understood he was to move as soon as he could find suitable living quarters for his family, but no time limit was set. He was to use the employer's automobile in traveling to and from Carbondale so long as he lived there, as well as in his territory, the employer paying his expenses on the road, including his outlays for the automobile.

Mr. Spradling's work week in his territory was from Monday through Friday. He was expected to get in all the selling he ██ could during the day and write up and mail in his orders in the evening. He might work many hours during the day. He followed no specified route but planned his own trips. A weekly report, beginning with Saturday and ending with Friday, showing his activities for the week, his ex-

penses, "Friday's Speedometer Reading" et cetera was to be made out after work on Friday. Mr. Spradling made out this report after arriving home in Carbondale on Friday evenings, and did some work at times on Saturdays and Sundays. It was contemplated he would spend his week ends in Carbondale until he moved to Peoria.

Mr. Spradling registered his daughter at Bradley University at Peoria, and made arrangements for realtors to help him find a home. Over the week end of June 9, 1951, Mr. and Mrs. Spradling decided to look for a home in Peoria on the week end of June 16th and 17th. Mrs. Spradling was to accompany her sister, Lorraine Henson, who lived in Springfield and was visiting the Spradlings, home, and Mr. Spradling, depending on where he was in his territory on Friday, was to come to Springfield Friday evening and meet his wife, garage the company's automobile, and make out his reports, or telephone her to meet him in Peoria. Mrs. Spradling would have to change buses at Springfield to go to Peoria. They expected to travel from Springfield to Peoria by bus, or interurban, or borrow a car from relatives for the trip if he came to Springfield.

The employer had been attempting to develop an account with the Staley Manufacturing Company of Decatur and Mr. Spradling on June 15th by long distance arranged with the Staley Company to bring a representative of the employer to see them on June 18th, Monday. The Staley Company later decided Tuesday would be preferable for the meeting, and being unable to locate Mr. Spradling wired the St. Louis office to postpone the meeting for a day.

Some time near 5:30 p.m. June 15, 1951, Mr. Spradling talked to a customer in Lincoln on the telephone and in the course of the conversation stated he was on his way to Springfield to meet Mrs. Spradling. About 10 miles northeast of Springfield and after Mr. Spradling had left his territory, Mr. Spradling's automobile and another automobile collided about 5:30 p.m. and Mr. Spradling died that evening as a result of the injuries received.

When Mrs. Spradling arrived at Springfield on the bus about 9 p.m. she first learned of her husband's accident.

The issue is whether Mr. Spradling met his death "by accident arising out of and in the course of his employment." § 287.120, RSMo 1949.

Under § 287.800 the Workmen's Compensation law is to receive a liberal construction as to the rights of employees. Pruitt v. Harker, 328 Mo. 1200, 43 S. W. 2d 769, 773[4,5]; Conyers v. Krey Packing Co., Mo. App., 194 S. W. 2d 749, 751[1]. We review the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission, and then determine whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. Michler v. Krey Packing Co., 363 Mo. 707,

253 S. W. 2d 136, 141[6]; Thacker v. Massman Const. Co., Mo., 247 S. W. 2d 623, 627[1, 2].

■ We have said: "It has been quite uniformly held that an injury arises 'out of' the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. 2d 128, 130[1, 2]; Morgan v. Duncan, 361 Mo. 683, 236 S. W. 2d 281, 283[2, 3]; Conyers v. Krey Packing Co., Mo. App., 194 S. W. 2d 749, 752[2]. Wamhoff v. Wagner El. Corp., 354 Mo. 711, 190 S. W. 2d 915, 919[9], ■ 161 A. L. R. 1454, quotes with approval from 71 C. J. 675, § 420, to the effect that an injury sustained in the performance of an act for the mutual benefit of the employer and employee usually arises out of and in the course of the employment and is compensable even though the advantage to the employer is slight.

Respondents say the facts are undisputed and the award to be entered is a question of law, the conclusion of the Commission either way not being binding on the court. Gantner v. Fayette Brick & Tile Co., Mo. App., 236 S. W. 2d 415, 417[1], and authorities cited.

Respondents' position is that Mr. Spradling received his injury outside of his sales territory at a time when his dominant and sole purpose was to go to Springfield to meet Mrs. Spradling, and the evidence does not permit of the inference the trip was made for business purposes or even for the dual purpose of work and personal errand. They stress McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S. W. 2d 43, and a quotation therein from Marks' Dependents v. Gray, 251 N. Y. 90, 167 N. E 181, 183, reading: " 'We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been cancelled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.' "

The following cases are also stressed: Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S. W. 2d 645, 649[3]; Duggan v. Toombs-Fay Sash & Door Co., 228 Mo. App. 61, 66 S. W. 2d 973,

978[5]; Kinkead v. Management & Eng. Corp., Mo. App., 103 S. W. 2d 545, 547[4]. The McMain, Mullally and Duggan cases have received consideration and we think are sufficiently distinguished from the instant case in later opinions. See Beem v. H. D. Lee Merc. Co., 337 Mo. 114, 85 S. W. 2d 441, 445; McCoy v. Simpson, 346 Mo. 72, 139 S. W. 2d 950, 953; Holley v. St. Joseph Lead Co., 356 Mo. 390, 201 S. W. 2d 941, 944; Brown v Weber Implement Co., 357 Mo. 1, 206 S. W. 2d 350, 354; Rainwater v. Wallace, Mo. App., 169 S. W. 2d 450, 456.

Respondents say the Kinkead case presents nearly the exact factual situation of the instant case. Kinkead was a field clerk and time keeper. He gathered up the time sheets from his employer's foremen and checked them and was furnished a truck to go to the different jobs to check such discrepancies as he might discover. He kept the truck available at night at his home for certain emergencies. His principal work appears to have been at the employer's warehouse. He lived about a mile south thereof. On the occasion in question he drove after work more than five miles northwest to meet and bring his wife home and on the return trip, but prior to reaching the point where he had deviated from his employer's services, he was injured in an automobile collision. The Commission's award of no compensation was upheld. The court mentioned (l.c. 546[1]) that had it been established as 'a fact claimant made the northwest journey, as he claimed, to check a discrepancy in a report made by a foreman of the employer, the deviation from his most direct route home for the incidental purpose of picking up his wife would not have been of such consequence, being slight, as to have deprived him of compensation; and recognized that traveling salesmen were in a more favorable position than was Kinkead (l.c. 547).

The instant case is not analogous to that of an employee whose furtherance of his master's business begins when he arrives in the morning and ends when he quits in the ▉ afternoon. The work of a traveling salesman takes him away from headquarters or home. His lodging and his meals and his going to his territory and returning to headquarters or home are considered incident to and acts of service within his employment so long as he performs them in a normal and prudent manner and does not step aside from his employment for personal reasons. The employer recognizes these necessities and usually pays the expenses incurred, as was done in this case. Leilich v. Chevrolet Mtr. Co., 328 Mo. 112, 40 S. W. 2d 601, 605; Beem v. H. D. Lee Merc. Co., 337 Mo. 114, 85 S. W. 2d 441, 442[1, 4, 5'], 100 A. L. R. 1044; Newman v. Rice-Stix D. G. Co., 335 Mo. 572, 73 S. W. 2d 264, 271; Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 52 S. W. 2d 880, 883; Thornton v. Hartford Acc. & Indem. Co., 198 Ga. 786, 32 S. E. 2d 816, 818; 71 C. J. 704, § 439; 58 Am. Jur.

730, § 225; Annotation, 20 A. L. R. 319, 325; 7 Schneider, Workmen's Compensation, 146, § 1635(c).

In the McMain, Marks' Dependents and Kinkead cases, supra, the employees were not traveling men, and their respective employments were not the occasion for the journey involved. Mr. Spradling's employment sent him out upon the highways and a return to his home in Carbondale from Lincoln on the occasion in question was within his employment. Instead of making a journey south and keeping within his territory as much as possible of approximately 175 miles from Lincoln to Carbondale he intended that Friday to travel approximately 29 miles over U. S. Highway 66, passing out of his territory after traveling 13 to 14 miles, to Springfield to meet his wife and after making out his weekly report, traveling with her to Peoria, 65 to 70 miles north of Springfield, to look for a home to further the interests of his employer and himself. He had made special arrangements to see a prospective customer at Decatur, about 40 miles east of Springfield, Monday morning, and the west boundary of his territory was about midway between Springfield and Decatur. He did not know that this meeting had been postponed for a day. His wife had an interest in the selection of their future home in Peoria. Respondents' argument that Mr. Spradling's trip to Springfield was personal for the purpose of meeting Mrs. Spradling and would not have been made had that purpose been abandoned does not give due consideration to his employment embracing his return after finishing work on Friday to his home in Carbondale, a factor not entering in the McMain and other cases stressed by respondents. The trip was not a pleasure trip. If he made arrangements to meet his wife at a more convenient point than Carbondale, although a short distance outside of his assigned territory, avoiding the hazards of a materially longer journey to Carbondale, for the purpose of promoting the interests of his employer and himself, we think a finding whether the accident arose out of and in the course of his employment was one of fact and not of law. Under the authorities supra and others involving traveling salesmen a finding that the trip was connected with Mr. Spradling's employment was warranted.

Mr. Spradling was privileged to select his routes of travel and was not restricted to routes within his sales territory. He would remain in his territory for a greater distance by traveling highways 121 and 51 from Lincoln via Decatur to his home in Carbondale. He would have been in his employment in so doing, and respondents would have been hard pressed for a defense had he arranged to meet his wife for the stated purpose at a point within his territory along such a route. His death was not the result of a peril added to his employment by the trip to Springfield. A trip home by Mr. Spradling from Lincoln via Springfield to Carbondale, necessitating travel outside of his territory for part of the distance, would constitute such

a slight deviation in choice of routes as to not affect the applicability of the Workmen's Compensation law. His meeting Mrs. Spradling in Springfield for the purposes established by the record and terminating his journey there should not change the result. Watson v. Marshall's U. S. Auto [33] Supply, Inc., 238 Mo. App. 1219, 186 S. W. 2d 556, 559[3]; Kinkead v. Management & Eng. Corp., Mo. App., 103 S. W. 2d 545, 546[1]; Newman v. Rice-Stix D. G. Co., 335 Mo. 572, 73 S. W. 2d 264, 271(III); Annotation, 76 A. L. R. 358(III).

The judgment of the circuit court should be reversed and the cause remanded with directions to enter judgment affirming the final award of the Commission. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy,* Acting P.J., and *Dew* and *Stone,* Special Judges, concur.