Frances R. DAMORE and Rita G. Damore, Dependents, James C. Damore, Employee, Deceased, Appellants,

v.

ENCYCLOPEDIA AMERICANA, Employer, and Royal Indemnity Company, Insurer, Respondents.

No. 45169.

Supreme Court of Missouri,

Division No. 2.

May 14, 1956.

Israel Treiman, John B. Sharpe, St. Louis, for appellants.

Albert I. Graff, St. Louis, Roberts & Roberts, Farmington, Malcolm I. Frank, St. Louis, for respondents.

BOHLING, Commissioner.

Frances R. Damore, widow, and Rita G. Damore, infant daughter, appeal from a judgment affirming an award of no compensation of The Workmen's Compensation Division of The Industrial Commission of Missouri arising out of an accident resulting in the death of James C. Damore, the husband and father. Mr. Damore was district manager at St. Louis for the Encyclopedia Americana, earning $60 a week, and Royal Indemnity Company was the employer's insurer. The claimants claim a single total death benefit in excess of $7,500 under Section 287.240 RSMo 1949, V.A.M.S. The amount in dispute vests appellate jurisdiction here under Smith v. General Motors Corp., Mo., 189 S.W.2d 259 [1]; Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S.W.2d 1046 [1] and other cases.

James C. Damore met his death as a result of an automobile accident about 15 miles out of Farmington at 9:45 p.m. Sunday, September 20, 1953, while en route from Perryville to Farmington, Missouri, a distance of fifty miles.

The finding of the referee and of the Commission, upon review, was, from all the evidence, that the death of James C. Damore "was not the result of an accident arising out of and in the course of his employment with Encyclopedia Americana." See § 287.120.

Claimants contend there was not sufficient, substantial proof or evidence to support the award.

Damore had supervision of the employer's salesmen, was expected to work with them and also to solicit orders. The employer required the salesmen to have the husband and wife sign the orders for the encyclopedia, urged them to work on week-ends that they might contact the husband and wife more readily, offered a bonus for week-end orders, and placed the names of salesmen securing three orders in a week in a bulletin. The salesmen also worked at night, sometimes until 11 p.m. or later, for this reason. They worked in "crews"; that is, in groups of three or four in a given town and surrounding territory at the same time.

Thomas Watkins, a trainer for the Encyclopedia Americana, came to St. Louis in July, 1953, and several crews were organized. He was under Damore and in charge of a crew which started working at Perryville prior to September 20, 1953. He, as was the practice, had rented two adjoining rooms at the Perry Hotel and had two telephones, with "blind" numbers, installed, one in each room. There was

evidence that the telephone numbers were 578 and 579. The practice was to make appointments for the salesmen over the telephone and enter the appointments on cards for the salesmen.

Damore, who had been working in Farmington for about two weeks, came to Perryville on September 17, 1953, to assist in the work there. He worked with the crew at Perryville on Saturday and Sunday, September 19 and 20, 1953. When Watkins came to the "crew" rooms at the hotel between 8 and 9 p.m. September 20, 1953, Damore was there.

Watkins, claimants' witness, testified that Damore was in a hurry; that Damore had taken two orders and asked Watkins to mail them with his, Watkins' orders, at Ste. Genevieve, where the train service was better, that the orders might reach the Kansas City office on Monday in time for their pay checks Wednesday; that Damore said he was going to Farmington on an appointment; that "Well, he said he wanted to get another order so he could get on the bulletin and he would see me tomorrow." Watkins also testified that, following the conversation, Damore went into the other room and either made or received a telephone call from Farmington; that shortly thereafter Damore left for Farmington; that Damore "liked to take a drink all right," usually before a meal, but he did not know of Damore drinking that evening; and that as a rule the salesmen kept their books and papers in their car when driving around.

Highway Patrolman Harold Schmitt, claimants' witness, testified he arrived at the scene of the accident about 10:20 p.m.; that Damore's automobile had run off the road on the right side, down an embankment and overturned; that a rear tire had a piece of wire in it and was flat; that he saw a brief case and some books and papers in the car and on the ground; that he replaced the books and papers in the car, and that there was a fifth of whiskey, about one-half gone, lying outside the car. Damore never regained consciousness after the accident.

The following facts were established by witnesses for the employer:

Mrs. Harry Fritz testified she and her husband operated the Perry Hotel at Perryville and she cleaned the rooms. She saw Damore drive away the night in question. He made three attempts to make a U-turn in "front of the hotel and finally made it." She had been away during the day. After Damore left, she went to see if the rooms were all right and found two empty whiskey bottles in the waste basket in his room.

William L. Tucker, business representative for the Southwestern Bell Telephone Company, testified that the telephones, numbers 578 and 579, were private, not public, telephones. He produced two toll tickets of the Perryville telephone exchange, which were offered in evidence. These toll tickets disclosed that a long distance call was placed from number 579 of the Perryville exchange at 7:25 p.m. September 20, 1953, to Farmington, number 611; and at 8:43 p.m. the same day Mary McDaniel placed a collect call from Farmington, number 611, to Perryville, number 578.

Mary McDaniel testified as follows: She was 29 years of age and a divorcee. She worked as a maid at the Ozark Village motel at Farmington, and Damore, with several other men, stayed at the Ozark Village motel just prior to September 20, 1953. She became acquainted with Damore then, and had dates with him while he was staying at the motel. He would pick her up at her apartment. On September 20, 1953, when she returned to her apartment, she found a message under her door from the Farmington Cab Company, telephone number 611, where her brother worked, to call Damore at a certain telephone number. She went to the Farmington Cab Company between 8:30 and 8:45 p.m., and placed a collect call for Damore in Perryville and talked with him. Damore asked her what she was doing that night, and when she answered "nothing," he asked her for a date and told her he would meet her in about a half hour at her apartment. She did not know he was mar-

ried. Her dates with Damore were all social dates, and there was no discussion of any business or the buying of any books at any time.

"In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo. 1945, V.A.M.S. This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.'" Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5, 11 [1]; Pittman v. Scullin Steel Co., Mo., 289 S.W.2d 57, and cases cited.

We review the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission, and then determine whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. Francis v. Sam Miller Motors, Inc., supra; Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W.2d 28, 30 [2].

Findings like the instant award have been considered findings of ultimate facts and an award upon the whole evidence, which includes the credibility of the witnesses and the weight to be given their testimony. Scott v. Wheelock Bros., Inc., 357 Mo. 480, 209 S.W.2d 149, 151 [3–5]; Ashwell v. United States Seed Co., Mo. App., 167 S.W.2d 950, 952 [2, 3]; Karch v. Empire District Electric Co., 358 Mo.

1062, 218 S.W.2d 765, 771 [7–9]. The instant record may permit of conflicting findings as to the ultimate facts. The question is not one of law but of fact to be determined by the trier of the facts.

We cannot say the Commission disregarded the testimony of witness Watkins for the claimants. It was not compelled to accept his testimony as true. Scott v. Wheelock Bros., Inc., supra, 209 S.W.2d loc.cit. 151; McCoy v. Simpson, 346 Mo. 72, 139 S.W.2d 950, 952 [6]. The Commission could find that Damore's statement to Watkins that he was going to Farmington on a business appointment was not a true statement by Damore or, for that matter, that the statement was not made. There is no evidence establishing any appointment card for a business trip by Damore to Farmington at 9 p.m. that Sunday. The stronger probative evidence is that Damore was not upon the highway by reason of any duty owing his employer, and that the risk of travel was his own.

We have reviewed claimants' cases. McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S.W.2d 43; Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183; Barrager v. Industrial Commission of Wisconsin, 205 Wis. 550, 238 N.W. 368, 78 A.L.R. 679, and Jones v. Corder, 196 Tenn. 478, 268 S.W.2d 359. They do not aid claimants. Upon as strong or stronger showings on behalf of the respective claimants, compensation was denied in the McMain, Marks' Dependents and Barrager cases. The facts and finding readily distinguish the Jones case.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.