**Lawrence T. RICKS, Dependent of Henry Crawford, Deceased, Appellant,**

**v.**

**H. K. PORTER, INC., Respondent.**

No. 53031.

Supreme Court of Missouri, Division No. 2.

March 10, 1969.

Motion for Rehearing or to Modify or to Remand to Industrial Commission Denied April 14, 1969.

Norbert M. Reker, Warren Grauel, St. Louis, for appellant.

Robertson, De Voto & Wieland, Leo C. De Voto, Jr., St. Louis, for respondent.

HENRY I. EAGER, Special Commissioner.

This proceeding involves a claim under our Workmen's Compensation statutes for benefits on account of the death of Henry Crawford. The referee awarded to the claimant payments which were the equivalent of $16,500, in addition to allowing the burial expense. The Industrial Commission reversed, awarding no compensation. The Circuit Court affirmed the award of no compensation. Under our ruling in Gennari v. Norwood Hills Corp., Mo., 322 S.W.2d 718, we have jurisdiction because of the amount involved, even though the award was made payable in installments.

There are no issues here concerning such formalities as notice, the filing of claim, weekly wage, etc.; also, it is conceded that the deceased employee, Henry Crawford, died on July 12, 1963, while an employee of H. K. Porter, Inc., because of an accident arising out of and in the course of his employment. The claimant, Lawrence T. Ricks, was a stepgrandson of the deceased. The questions involved are: (1) was claimant a relative by marriage of the deceased at the time of his death? And (2), was he "actually dependent" for support, in whole or in part upon deceased's wages? § 287.240(4) RSMo 1959, V.A.M.S.

It has been stated by appellant that there is no dispute about the facts, but we note that there is at least a substantial dispute about the inferences to be drawn from the evidence. The claimant, Lawrence T. Ricks, was born on September 22, 1942, and thus was 20 years, 9 months and 20 days old at the date of the employee's death. His father and mother were divorced in 1953, and his custody was then granted to his paternal grandmother, Edith Crawford. As a matter of fact he had been living with Edith Crawford and her husband, the deceased employee, since his infancy. The grandmother and Mr. Crawford were married on November 7, 1942, soon after the claimant's birth. Mrs. Crawford died on June 30, 1963, 12 days before the death of her husband; at that time she was still his wife. They had no children.

Claimant had continued to live with the Crawfords from his infancy until their respective deaths. It was agreed that he was not physically or mentally incapacitated from "wage earning." At the hearing before the referee on June 17, 1965 he testified: that he was then in the Army stationed at Ft. Bragg, North Carolina, having been drafted 14 months earlier; that both his parents were still alive (but divorced) and that they lived in St. Louis; neither had ever lived with the Crawfords; that his parents had never supported him, and that his sole support was Mr. Crawford, the deceased employee; that Mrs. Crawford worked only as a housewife; that he had attended and completed grade school and also attended Vashon High School in St. Louis when he finished "termica" education in 1959, but that he did not "exactly graduate." (We note here that we fail to see why someone, counsel or referee, did not ask for a more complete explanation of this unusual term, if indeed the word is correctly transcribed). Claimant had been employed by the Pearl Paint Company for a period of 3 months at some time before the death of deceased, earning $30 a week; apparently that work was in the summer of 1962; he had been able to handle that job "satisfactorily." He testified further: that he spent the

money thus earned "on himself" and paid nothing for room and board; that he quit that job voluntarily because, *he said,* he was working 16 hours a day, "couldn't take it," and that he was "not satisfied with the conditions"; that he had applied for work at other places, including "Chevrolet," "these hospitals" (further unexplained) and "other places"; that no one would hire him; that he also went to the "Missouri Unemployment Service," but that they found him nothing; that he had passed the tests given for induction into the Army, both mental and physical, and had become a P.F.C. After the death of Mr. Crawford the father of claimant, who was getting a "relief" check of $70 each month, came to live with him and they both lived on this until claimant went into the Army in March 1964. We note here that the referee said to claimant: "Well, you appear to be a nice looking, intelligent young man."

The referee, as already noted, found that claimant was "solely and fully dependent" upon the deceased for support, although the latter was under no legal obligation to support him; he further ruled that claimant was a "relative by marriage" of the deceased. That finding of dependency seems actually to have been more or less of an assumption derived from the fact that claimant was actually being supported by the deceased. The Industrial Commission, with no dissent, and after noting the substance of the above facts, found: that the facts were "not convincing that he (claimant) was or should have been a dependent of the deceased employee, at the time of the injury. * * * he was a grown young man and had no mental or physical impairment that would incapacitate him from wage earning. Ricks was not dependent upon Mr. Crawford for support but was merely staying with him." It further found: that Ricks was more able to work and support himself than his stepgrandfather was to support him; that he "owed it to himself to use his strength, energy and young body to work and there-

by procure necessary financial resources to sustain himself in a manner befitting his class and station in life * * *; that Lawrence T. Ricks was not actually dependent on the wages of deceased employee for support * * *."

The Commission indicated, without expressly so ruling, that a stepgrandson was not a relative by marriage under the Missouri decisions, but that, being a conclusion of law, is immaterial upon our present review. The Commission did state that, since the facts were undisputed, the question of dependency was one of law. We do not entirely agree with that conclusion, and the Commission itself did not strictly follow it, for it proceeded to make findings of fact as already indicated. And even if the facts were undisputed it was the duty of the Commission to draw from those facts all reasonable *inferences* which were essential to a determination.

Section 287.240(4) RSMo 1959, V.A.M. S., is in part as follows:

"The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury."

The statute then lists those persons who are conclusively presumed to be totally dependent, including a wife, and a "natural, posthumous, or adopted child or children, * * * under the age of eighteen years," or over that age if "physically or mentally incapacitated from wage earning * * *." In other cases the question of total or partial dependency "shall be determined in accordance with the facts * * *."

It is obvious here that claimant is not one of those conclusively presumed to be a dependent and dependency here must be decided in accordance with the facts. If he was not a dependent it will not be necessary to consider whether he was "related by marriage" to the deceased, for both conditions must exist to support an award.

It is hardly necessary to reiterate all the oft-stated principles applied in our review of Workmen's Compensation cases. It will suffice to say that findings of the Commission are binding on the reviewing court if supported by competent and substantial evidence and if not contrary to the overwhelming weight of the evidence. Ginter v. Freund Baking Co., Mo.App., 388 S.W.2d 505, and cases there cited; Bauer v. Independent Stave Co., Mo.App., 417 S.W.2d 693; Miranda v. American Refrigerator Transit Co., Mo.App., 392 S.W.2d 413; Lashbrook v. Clipper Mfg. Co., Mo.App., 377 S.W.2d 785. And the court must view the evidence in the light most favorable to the prevailing party. Lashbrook and other cases cited. The Commission passes upon the credibility of the witnesses and upon the weight of any and all testimony, and it may decide a case upon its disbelief of uncontradicted and unimpeached testimony. Bauer v. Independent Stave Co., supra; Ginter v. Freund Baking Co., supra; Miranda v. American Refrigerator Transit Co., supra; Snowbarger v. M.F.A., Mo., 349 S.W.2d 224; Raef v. Stock-Hartis, et al., Mo.App., 416 S.W.2d 201; Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105; Lawson v. Lawson, Mo.App., 415 S.W.2d 313; Garner v. Research Clinic, Mo.App., 280 S.W.2d 416. In reviewing such cases, we view the whole record and consider the inferences which the Commission may reasonably have drawn from the evidence. Sundry cases have applied these principles to the findings and determinations of the Commission, as distinguished from those of the referee, and in instances where such findings and decisions have been adverse to those of the referee. Ginter, Miranda and Lashbrook, supra. The question of "actual dependency" under our statute is a question of fact and compensation may be denied by the Commission for a failure of the claimant, who has the burden of proof, to establish such dependency. Ashwell v. U. S. Seed Co., Mo.App., 167 S.W.2d 950; Kemmerling v. Karl Koch Erecting Co., 338 Mo. 252, 89 S.W.2d 674; Bauer v. Independent Stave Co., supra.

The Missouri cases have not dealt extensively with definitions of "dependency" or "actual dependency," at least not in the circumstances of this case. In Elihinger v. Wolf House Furnishing Co., 337 Mo. 9, 85 S.W.2d 11, the court held that a legal obligation to support was not necessary in order for dependency to exist; there a son had been contributing regularly (with his father) to the support of the household consisting of the parents and the son, and the parents were held to be partially dependent. The case is cited by appellant, but it adds little of value in our situation. Various cases cited by appellant deal with the extent of dependency, not its existence or nonexistence. These are not really in point here. In Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S.W.2d 551, the court again stated that legal liability for support was not necessary and held that an unemployed sister was dependent upon the deceased employee by reason of regular contributions made to her, which were her only actual income. The court denied a contention that no case had been made because the claimant had not shown that she was incapacitated from working, but in doing so it noted that there was no evidence of her ability or incapacity, or of her age or condition of health. It further held that the findings of fact of the Commission if supported by substantial evidence are conclusive on the court, and in fact merely *affirmed* an award finding dependency and a finding of accident arising out of and in the course of the employment.

In Dykes v. Thornton, et al., Mo., 282 S.W.2d 451, the court upheld an award finding that parents were dependent upon a 19-year old son. After referring to § 287.-240(4) for its definition of a dependent, the court said, loc. cit. 454: "Dependence within the meaning of the Workmen's Compensation Law does not mean absolute dependency for the necessities of life, but rather that the claimed dependent looked

to and relied on the contributions of the employee, in whole or in part, as a means of supporting and maintaining himself." We have no quarrel with the statement as applied to that case, but the definition given is not all-inclusive. The same thing is true of statements in certain other opinions, such as Shaffer v. Williams Bros., 226 Mo.App. 635, 44 S.W.2d 185.

In Larson on Workmen's Compensation, Vol. 2, in § 63.11, it is recognized that the usual test is whether the contributions of the employee were relied on for support, and in § 63.21 that a legal obligation is not generally necessary. However, the author states, at § 63.23, that the supposed dependency of a son whose failure to work is the "result of his own lack of diligence and effort" should be denied, whether or not he has actually been receiving support from his father. Two cases are cited (to be mentioned later) as illustrating the principle that "actual receipt of support will not be taken to establish dependency when the claimant has not used resources reasonably available for his own support." Thus in Gherardi v. Connecticut Co., 92 Conn. 454, 103 A. 668, a 22-year old son had worked but little, and had received more or less regular contributions from his father; the court held, in reversing an award of partial dependency in favor of the son, that it is not sufficient that one, claiming to be a dependent, has merely come to *rely* upon help from the deceased employee, and that he may not simply rely on such support and live in idleness. The court said in part at 103 A. loc. cit. 670: "* * * no one, not belonging to the enumerated classes of persons conclusively presumed to be dependent, is entitled to be regarded as a dependent or partial dependent whose financial resources at his command or within his power to command by the exercise of such efforts on his part as he reasonably ought to exert in view of the existing conditions, are sufficient to sustain himself and family in a manner befitting his class and position in life without being supplemented by the outside assistance which has been received or some measure of it."

In Ferriter's Case, 269 Mass. 267, 168 N. E. 747, an adult son, not incapacitated, who had lived with his father, relied upon that support, and had found no work that was "satisfactory" to him, was denied compensation by the Commission and by the court. There the court held that one may not refrain from the use of resources reasonably available to him, including the ability to work, and successfully claim to be a dependent. In effect, the case holds that the burden is upon such a claimant to prove that he was not reasonably able to earn his own living. Various authorities are cited there. See also Schneider, Workmen's Compensation, Vol. 9, § 1901, p. 11, to the effect that one must use the abilities and faculties with which he is endowed, and that he cannot claim dependency because available employment is disagreeable, also, that no one is dependent if he has sufficient means at hand for supplying the necessities of life according to his standard of living.

We have determined that the rule so stated (Larson, Gherardi, Ferriter, Schneider) is the correct one, and that it should be followed in Missouri. The Missouri cases which we have mentioned were decided on their own facts and really present no conflict with that rule. This does not mean that an adult son or daughter who is incapacitated from working, physically or mentally, should be denied compensation; nor does it mean that an adult daughter who has been led to forego her own activities to keep house (and care for) her parents, should be denied compensation as a dependent.

Claimant has cited the cases of Northern Hotel Co. v. Industrial Comm., Wis., 223 Wis. 297, 270 N.W. 66, and Meyler v. Mayor and City Council of Baltimore, 179 Md. 211, 17 A.2d 762. The first case arose during the depth of the depression in the 1930's and, as Mr. Larson indicates, it is clear that the court simply found that this was solely responsible for the son's unem-

ployment, and not any disinclination to work on his part. We have no such situation here. Moreover, the son there was actually helping his father with his work as a janitor at the time of the latter's death. It is also to be noted that there the Commission found a total dependency, and the court merely held that there was evidence to support that award. In Meyler, supra, claim was made by a stepdaughter for a continuance of benefits arising from the death of the employee, her stepfather. It appeared that the claimant, an adult woman, had been induced to quit a job and come to the home to take care of her mother, the stepfather, and the household. It was held that under these circumstances the mere physical and mental ability to work on the part of the claimant did not disqualify her. On its facts, the decision in that case is not opposed to the rule which we now adopt.

■ In our case, we look to the whole record including the findings of the Commission. We hold that the Commission did make findings, whether of primary facts or of ultimate facts (Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105) based upon its inferences from the evidence and stipulations. These findings were probably founded, at least in part, upon a disbelief of certain portions of the claimant's testimony, and they incorporated an ultimate finding that the claimant had simply failed to sustain his burden of establishing an "actual dependency." Thus, the Commission noted that: the claimant had suffered no incapacity "from wage earning," and was in good health, that he had been employed for 3 months, that he was almost 21 years of age, that he was not dependent upon deceased for support, "but was merely staying with him," that claimant was more able to work and support himself than was the deceased able to support him, and that he owed it to himself to work and support himself. It is further worthy of note that the Commission stated that the facts "are not convincing that he was or should have been a dependent of the deceased employee at the time of the injury."

We hold that the findings and decision of the Commission on the issue of dependency are supported by competent and substantial evidence on the whole record and that they are not against the overwhelming weight of the evidence.

Counsel for the claimant made the statement in argument that the respondent had conceded dependency. We find no such concession in the record. He must have referred to the fact that in respondent's first brief counsel *argued* only that claimant was not a "relative by marriage" within our statute, although the one Point submitted asserted a failure to prove dependency generally. After an opinion was written here affirming the trial court upon the ground that claimant was not a "relative by marriage" at the time of the death of the employee, a rehearing was granted. Appellant then filed a motion to restrict the rehearing to the matters covered in that initial opinion, and we overruled the motion. The rehearing was held upon the case as a whole, in accordance with our usual practice on rehearings. In a supplemental brief respondent submitted at some length its position on the subject of actual dependency as related to the evidence and the findings of the Commission. Appellant had briefed the question in its first brief. The whole case was properly before the court on rehearing and we decide it upon that basis.

In view of the foregoing the question of whether or not the claimant was "related by marriage" to the deceased employee at the time of his death has become immaterial; a discussion of that subject would now be mere dicta.

The judgment of the trial court affirming "the findings and decision of the Industrial Commission" is affirmed.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.