N. W. SHAFFER ET AL., RESPONDENTS, v. WILLIAMS BROTHERS, INC., ZURICH INSURANCE CO., APPELLANTS.—44 S. W. (2d) 185.

Kansas City Court of Appeals. December 7, 1931.

*Roy D. Williams.* and *Walter D. Semple* for respondents.

*Shughart & Johnson* for appellants.

BLAND, J.—This is an appeal by the employer and the insurer from a judgment of the circuit court affirming an award of the Workmen's Compensation Commission in favor of claimants, N. W. and Ada Shaffer, husband and wife. Compensation was claimed and allowed on account of the death of plaintiffs' son, Amuel L. Shaffer.

The facts show that deceased died on November 20, 1930, as a result of an accident received by him on that day arising out of and while in the course of his employment with the defendant, Williams Brothers. At the time of his death he was a few months over twenty-one years of age.

The facts further show that claimants with their eight minor children lived on a twenty-seven acre rented farm near Denning, Arkansas; that claimant, N. W. Shaffer, father of the deceased, at the time of the death of the latter and for sometime prior thereto, had worked as a coal miner making an average wage of between $60 and $70 per month; that he also farmed, with the aid of his children, forty-five acres of rented ground in addition to the twenty-seven acre tract upon which he lived; that the claimant, Ada Shaffer, devoted all of her time to her household duties; that from June, 1928, until December, 1929, deceased worked in Detroit, Michigan; that during the time of his employment there he sent claimants between $35 and $40 per month; that this money contributed by deceased to his parents was used by the father in buying groceries, clothing and supplies for claimants and their minor children; that deceased left Detroit in January, 1930, came to the home of claimants and assisted his father in farming and harvesting a crop and doing various farm work; that while helping his father he was paid no wages but his father furnished him spending money; that during the summer of 1930 he contributed the sum of $10 to his father which he had made baling hay.

At the conclusion of the harvesting season, about July 26, 1930,

deceased left claimants' home and went back to Detroit in search of work but he did not procure employment there. He spent about seven weeks in Detroit and from there went to Tulsa, Oklahoma, where he worked a "day or so" for a candy company. Five days before the death of deceased he obtained employment from the defendant, Williams Brothers, and was working for that company near Boonville when he met with the accident causing his death.

From the time he ceased to work in Detroit in December, 1929, until the day of his death he made no contributions in money to the support of his parents, outside of the $10 referred to. From the time he left the farm on July 26, 1930, until the day of his death he had not contributed anything either in work, services or money to their support. The mother testified that deceased stated he was going to help his parents when he found work.

It was stipulated and agreed that the average weekly wage of deceased was $20.19 and that the compensation wage was $13.46 per week. The commissioner found in favor of claimants and allowed them compensation at the rate of $6.69 per week for 300 weeks and in addition thereto $150 for burial expenses, which amount had been paid, at the time of the hearing, by defendants. He further made a findings of facts, to the effect, that deceased had contributed his earnings, less his upkeep, to his father and mother prior to his death and that in the opinion of the commissioner he would have continued to do so in the future. He further found that the cost of deceased's room and board at Boonville during the course of his employment by the defendant, Williams Brothers, would have been $7 per week and his incidental expenses would have been $3 per week, or a total of $10 per week; that deceased, had he lived, would have contributed the balance of his average weekly wage, to-wit, $10.19 to his parents.

An application for review was duly filed and, upon a review by the full commission, it entered its final award modifying the original award, in that claimants were granted compensation at the rate of $6 per week for 273 weeks, the commission finding that the cost of deceased's room and board, while employed by Williams Brothers, would have been $7 per week, that a reasonable allowance for his incidental expenses would have been $5 per week, making a total of $12 per week and that deceased would have contributed the balance of $8.19 to his parents.

It is insisted by the defendants that there was no competent evidence in the record to support the finding of the commission as to the extent of the contributions that deceased, had he lived, would have made to the claimants. We think that this contention must be sustained, for the reason that there was no evidence concerning where deceased was living when he was killed, what he agreed to

pay for room and board, the reasonable value of room and board in the city of Boonville or the habits of deceased, whether he was frugal, extravagant or otherwise. The record does not disclose how much he earned while working in Detroit, only the amount he sent home. There is nothing in the record from which the commission could find that deceased's board and room would have been $7 per week or that $5 per week would be a reasonable allowance for his incidental expenses. The amount of the incidental expenses would depend upon deceased's habits or what he was accustomed to spend for this purpose and there is no evidence of this.

Claimants insist that "the failure to introduce evidence as to these facts goes to the mitigation of the award, was a failure upon the part of the appellants, of which failure the respondents do not complain, and the appellants are to be precluded from complaining." No case is cited in support of this contention. We think that, undoubtedly, the burden was upon plaintiffs to show the amount of the contributions deceased would have made to his parents had he lived. [28 R. C. L. 827, sec. 115.]

As the case will no doubt be retried it is necessary for us to pass upon contentions made by defendants.

It is claimed that there is no evidence that claimants actually depended for their support, in whole or in part, upon the wages of deceased at the time of his death.

"First: Because contributions were not necessary to the support and maintenance of the family in their usual and customary standard of living at the time of the injury.

"Second: Because they were receiving no contributions from his wages at the time of the injury."

With reference to the first reason assigned defendants state:

"The most positive proof of the fact that contributions were not necessary is the admitted fact that no contributions were being made, yet the family continued to live and there is no evidence that their standard of living had been decreased in any degree."

Under the provisions of section 3319 (d), Revised Statutes 1929, it is provided that in order to be a dependent one must be actually dependent for support, in whole or in part, upon the employee's wages at the time of the injury. This section also provides, immediately following, for those who are conclusively presumed to be totally dependent. Claimants do not come within this class. The section later provides that in all other cases the question of partial or total dependency shall be determined in accordance with the facts at the time of the injury.

"In a majority of jurisdictions, however, the view seems to have been accepted that dependence within the terms of the statute does not mean absolute dependency for the necessities of life, but rather

that the applicant looked to and relied on the contributions of the workman, in whole or in part, as a means of supporting and maintaining himself or herself in accordance with the applicant's social position and accustomed mode of life. A person may be a dependent, according to this view, although able to maintain himself without any assistance from the decedent. And so the mere ability to earn a livelihood will not prevent one from being a dependent." [28 R. C. L. 771, sec. 66.]

"It is not essential to show exactly what proportion of the parent's living expenses are contributed by the child. Inasmuch as dependency is not based upon absolute necessity, a father may be found to be dependent upon the earnings of a son who had given his wages to his father, although the latter might also be earning wages which could have supported him and his family. But a parent cannot be said to be dependent where it appears that he is enabled to save money out of his child's wages, after having paid all of the latter's expenses." [28 R. C. L. 779, sec. 72.]

The fact that deceased was making no contributions to claimants at the time of his death is certainly not determinative of the question. After the death of an employee all contributions out of his wages to his dependents are, of course, cut off, yet, no doubt, in most cases it will be found that the dependents of the employee, by absolute necessity, are actually living upon the income at the time they make their claim. As we read the testimony, claimants and their family were living frugally and, yet, nothstanding this, their income from all sources was less than their bare living expenses. The fact that the contributions of the deceased went to the payment of living expenses and that they have now ceased, is some evidence of the necessity of the contributions, in relation to the ability of the claimants to support themselves and their minor children in accordance with their "social position and accustomed mode of life." [28 R. C. L. 771, 779; Clingan v. Carthage Ice & Stor. Co., 25 S. W. (2d) 1084; Rasor v. Marshall Hall Grain Corp., 25 S. W. (2d) 506; Triola v. Western Union Tel. Co., 25 S. W. (2d) 518.]

The second reason assigned is based upon the fact that claimants were receiving no contributions from the employee's wages at the time of his injury and death. In arguing this point defendants say:

"These parents had received no contributions from this boy in money since in December of 1929. They had received no contributions either in services or money since the 26th day of July, 1930, or approximately four months prior to his injury and death. They had received no contributions from his wages earned as a result of his employment by the appellant, Williams Brothers. Having received no money from him during the period of his employment nor

for a period of four months prior to his death, they could not be actually dependent upon his wages on November 20, 1930, the date of the injury.''

While the statute requires that the claimants should be actually dependent for support, in whole or in part, upon the wages of the son at the time of his injury, the mere fact that he was out of work at that time is not determinative of the matter.

''The question whether the parent is in fact, a dependent is a question of fact and not of law. The case is clear where the child is a regular contributor to the family fund.

''It is not absolutely required that the contributions should be continuous; it is sufficient if there is a willingness to contribute and the son is unable to make the contributions by reason of lack of employment. 'We would be whittling away the act were we to say that where money payments have been made, as here, and when the workman is out of employment or out of full employment for a short time, that then there was no dependency.' '' [Boyd on Workmen's Compensation, p. 1079, sec. 499.]

''As to whether dependency may be found in respect of conditions that are to commence in future—the workman having contributed nothing in the past—the authorities are not in agreement. According to the more liberal view, it is not essential to prove actual contributions by the child in order to establish the dependency of the parent. The promise of the child, or the implication from the relations of the parties, may give rise to a reasonable expectation of future support and maintenance, just as effectively as past contributions.'' [28 R. C. L. 779, 780, sec. 72; Parsons v. Murphy, 101 Neb. 542.]

The evidence shows that deceased was contributing money to the support of his parents while he was employed and when he was unable to secure employment he worked for his father without pay and during that time made a small contribution of money to his father earned on the outside. He told his mother when he obtained work he intended to resume making contributions. Under these circumstances it would be a clear violation of the Workmen's Compensation Law (sec. 3374, R. S. 1929), which provides for a liberal construction of its terms, to say there is no evidence upon which the commission could award compensation in this case.

We have examined the authorities cited by defendants and find that, when facts in each case are examined, none of them conflict with our holding this case. The judgment is reversed and the cause remanded with instructions to the lower court to remand the cause to the compensation commission for further hearing. All concur.