FRED ELIHINGER and LONIE ELIHINGER v. WOLF HOUSE FURNISHING COMPANY, LINCOLN HOUSE FURNISHERS, INC., Employer, CONSOLIDATED UNDERWRITERS INSURANCE COMPANY, Insurer, Appellants.—85 S. W. (2d) 11.

Division One, July 9, 1935.

*Oliver & Oliver, Elmer A. Strom* and *E. B. Simpson* for appellants.

12

*Dearmont, Spradling & Dalton* for respondents.

FERGUSON, C.—This is an appeal from the judgment of the Circuit Court of Cape Girardeau County affirming an award of the Workmen's Compensation Commission in favor of respondents, Fred Elihinger and Lonie Elihinger, parents of Arnold Elihinger, deceased, who was, at the time of the injury which resulted in his death, employed by appellant Wolf House Furnishing Company a subsidiary branch of the Lincoln Home Furnishers. It was stipulated and agreed that on September 9, 1932, Arnold Elihinger sustained an injury "by accident arising out of, and in the course of, his employment" by the Wolf Company; that "both the employer and employee, were operating under the Workmen's Compensation Law;" that "all liability under such law is covered by the Consolidated Underwriters Insurance Company" also an appellant here; that the deceased employee "died October 20, 1932, as result of the injury sustained in the accident of September 9, 1932;" that "the employee had worked for" the Wolf Company "for a period of 25 5/7 weeks preceding this accident and received wages at the rate of $15 per week during that period;" that if an award be made in favor of the claimant parents "the average weekly wage may be computed at $15;" and that the "insurer paid as compensation to the deceased employee before his death the sum of $48.05," and paid $150 as funeral expenses. As stated the claim was filed by the father and mother of the deceased employee.

The stipulation which we have summarized, supra, reduced the issue involved to that of dependency of the parents, that is their right to maintain a claim as dependents, and, if same be allowed, the proper amount of the award under the facts. The employer and the insurer, as appellants, deny that the parents are, or can be considered under any circumstances, dependents, either total or partial, within the meaning of our Workmen's Compensation Law. The employee was twenty-one years and ten months of age at the time of his death. Appellants' position is that since there was no legal obligation upon the son to support, or contribute to the support of, his parents they cannot be considered "in any sense legal dependents" and regardless of his contributions toward their support at the time of, and of which they were deprived by his death, they are not entitled to the benefits allowed dependents by the Work-

men's Compensation Law. ▮ This appeal went to the St. Louis Court of Appeals and that court in a well-considered opinion, 72 S. W. (2d) 144, from which we shall later make numerous quotations, held against appellants' contention and ruled that under the facts, which we shall later set out, the parents were "dependents" within the meaning of that term as used in the Workmen's Compensation Law, all the judges of that court concurring, but deeming the opinion to be in conflict with the opinion of the Kansas City Court of Appeals in Hill v. Nafziger Baking Co., 227 Mo. App. 846, 57 S. W. (2d) 773, certified the cause here and it becomes our duty to "rehear and determine said cause . . . as in case of jurisdiction obtained by ordinary appellate process." [Sec. 6, Amend. 1884, Art. 6, Constitution of Missouri.]

The evidence was that Arnold Elihinger, the employee, was a single man and made his home with his parents, the claimants here; that the family, or members of the household, consisting of the mother, father, Arnold, the son,. and his maternal grandmother resided in a rented house at Cape Girardeau; that Arnold started to work at the age of sixteen and that he worked for some time during his minority for the International Shoe Company at Cape Girardeau but quit that position a few months after attaining his majority and thereafter went to work for the appellant Wolf Company where his father was also employed; that during his employment with the shoe company he regularly delivered or turned over his wages to his mother; that the Wolf Company paid him $15 a week and his father $13 a week; that the father usually collected both his own and his son's wages; that their combined weekly earnings of $28 were turned over to the employee's mother and constituted a common fund out of which all the expenses of the family were paid, the house rent, the purchase of groceries, food and household supplies, clothing, payment of light and water charges and all the expenses incident to the maintenance of the home as well as the personal expenses of members of the family; that the family shared the home and the mother did the house work, prepared the meals and did the laundry work and mending for the family; that the son would go to the mother and draw from the common fund such money as he needed for his personal expenses and clothing but the mother testified that such sums would not amount to or average more than $2 a week or $100 a year; that everything the family or any members thereof purchased, as an occasional piece of furniture, by installments, was paid for out of this common fund; that the first and subsequent payments on a family automobile, title to which was taken in the son's name, were

paid out of this common fund, as well as the cost of operation and upkeep thereof, and the automobile was used by both the father and son individually and for family purposes, and sometimes in work for their common employer who at such times paid the operating costs; that the earnings of the father and son was the sole source of income for the support of the family and that their earnings had never been kept separate but from the time the son first started to work until his death had been commingled and constituted a common fund, in the hands of the mother, for the maintenance of the home and the support of the family and the necessary expenses of the individual members thereof. The bookkeeper and cashier of the employer company testified that she paid the employees in cash; that the father collected both his own and the son's wages and "there was an understanding between Arnold and myself that I give all his money to his father and I did that. Mrs. Elihinger collected the money in advance once in awhile, if they ran short we would give it to them in advance" and "I know his (Arnold's) pay went toward the living expenses" (of the family).

Upon very similar facts the St. Louis Court of Appeals has held that the claimants, in each instance parents or a parent, were properly classified as "partial dependents" and entitled, as such to the benefits allowed by the Workmen's Compensation Law. [Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482; Sweeny v. Sweeny Tire Stores Co., 227 Mo. App. 93, 49 S. W. (2d) 205; Triola v. Western Union Telegraph Co., 224 Mo. App. 258, 25 S. W. (2d) 518. See, also, Clingan v. Carthage Ice & Cold Storage Co. (Mo. App.), 25 S. W. (2d) 1084, and Rasor v. Marshall Hall Grain Corporation, 224 Mo. App. 253, 25 S. W. (2d) 506.] The court so held in view of the evidence showing actual dependency, in part, by the parent upon the wages of the deceased employee at the time of the injury and the definition of a "dependent" set out in the Workmen's Compensation Law as follows: " 'dependent' . . . *shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury.*" [Sec. 3319 (d), R. S. 1929.] (Italics ours.)

While dealing with a different state of facts the Kansas City Court of Appeals in Hill v. Nafziger Baking Co., supra, nevertheless holds that "one may not claim to be a dependent within the meaning of the law (Workmen's Compensation Law) for support upon the wages of another unless the latter is legally liable to furnish such support" and declares: "The act designates the class who are dependents but it does not define the term 'dependency.' In the absence of legislative

definition of the term, courts will hold it means legal dependency, for the reason that courts will enforce legal obligations but will not enforce mere moral duties.'' Relying upon this case appellants advance the contention which we have noted, supra, that regardless of the facts showing that at the time of the injury the deceased employee was regularly contributing of his wages to the support of his father and mother and that they were actually, at least in part, dependent thereon since he was under no legal obligation to do so they were not dependents within the meaning of the Workmen's Compensation Law.

Following the definition, set out, supra, of ''the word dependent as used'' in the Workmen's Compensation Law that act then declares:

''The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee in the following order,'' etc. (1) ''A wife upon a husband legally liable for her support, and a husband mentally or physically incapacitated from wage earning upon a wife,'' etc. (2) ''A natural, posthumous, or adopted child or children, . . . under the age of eighteen years, or over that age if physically or mentally incapacitated from wage earning, upon the parent with whom he is living at the time of the death of such parent, there being no surviving dependent parent or stepparent. In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury.'' [Sec. 3319 (d-1-2), R. S. 1929.] (Italics ours.) Keeping in mind the definition of the word dependent set out in the Workmen's Compensation Law we adopt the following from the opinion of the St. Louis Court of Appeals herein:

''Under the plain and unambiguous terms of this statute, in cases of claimants not within the class of those conclusively presumed to be totally dependent, the only elements required to be proved to show dependency are: First, that the alleged dependents are relatives by blood or marriage of the deceased employee; and, second, that they were at the time of the injury actually dependent for support, in whole or in part, upon the wages of the deceased employee.

''The claimants herein being the father and mother of the deceased employee, and therefore possessing the necessary relationship to him, it is clear that they come within the above-mentioned first requirement of the statute. They are not, however, among the persons named by the statute as conclusively presumed to be totally dependent for support upon the deceased employee. Their case, therefore, with respect to the above-mentioned second requirement of the statute, falls within the classification of 'all other cases,' and the question as to whether or not they were, at the time of the injury, actually

dependent for support, in whole or in part, upon the wages of the deceased employee, must 'be determined in accordance with the facts at the time of the injury,' as provided in the latter part of subdivision 2 of subsection (d), Section 3319, Revised Statutes 1929.

"In defining the word 'dependent,' nothing whatsoever is said in the statute, which requires proof of a legal obligation on the part of an employee to render support to a claimant, as a necessary element of dependency.

"Notwithstanding what appears to be a plain and clear definition of 'dependent' in the statute, appellants argue that the word 'dependent' is not defined therein and that 'dependent' therefore means only 'legal dependents.' From this it is contended that the son of claimants herein, having been an adult at the time of his injury and death, was under no 'legal obligation' to render support to claimants, hence there was no dependency. They rely mainly on the case of Hill v. Nafziger Baking Co. (Mo. App.), 57 S. W. (2d) 773, 774. . . .

"It is true, as stated in the Hill case, the word 'dependency' is not defined in the statute, but appellants are in error in stating in their brief that the word 'dependent' is not defined therein. We are of the opinion that the Legislature having provided a clear definition of the word 'dependent,' it was unnecessary to define the word 'dependency.' If the facts in a given case show a claimant to be 'dependent,' it necessarily follows that such claimant occupies the status of 'dependency.' To say that the Legislature did not define the word 'dependent' is to ignore completely the very language of the statute. . . .

"We think it is incorrect to say that the Legislature has failed to define 'dependent' merely because it gave a broad definition of that word instead of going into particulars to describe various kinds of 'dependents.' We believe that the use of such a broad definition, and the absence therefrom of the term 'legally liable' when contrasted with subdivision 1 immediately following, wherein the term 'legally liable' appears in the provision as to a wife's dependency upon a husband, shows a clear legislative intention to exclude the element of legal liability of a deceased employee to support a claimant, in all cases, except in the case of a wife who is dependent upon a husband 'legally liable for her support.' . . .

"We are unable to agree with the contention of appellants that the definition of 'dependent,' prescribed by the Legislature, should be construed so as to require proof of a legal obligation, or legal liability of the deceased employee to render support to claimants as a prerequisite to an allowance of benefits for their son's death. The statute itself having provided a complete, clear and unambiguous

definition of the word 'dependent,' and a complete rule for determining dependency, we are not authorized to go outside of its provisions to find a definition of that word, and a rule to apply herein. To sustain the contention of appellants in this respect would require us to read into the statute language which does not appear therein. This we are not authorized to do.

"We are of the opinion that it is immaterial, in this case, whether the deceased employee was or was not under a legal obligation to support his parents in view of the statutory definition of 'dependent.' It having been shown that the claimants herein were 'dependents' of the deceased employee, as defined in the Workmen's Compensation Law itself, that law creates the obligation of the employer to pay them the death benefits provided for therein.

"The evidence in this case shows without dispute that the wages earned by the deceased son of the claimants from the time he was sixteen years of age up until the time of his death were delivered by him to his mother, and such wages, along with those earned by his father, made up the common fund from which all of the expenses of the household, including his own personal expenses, were paid. The evidence further shows without dispute that the family had no source of income other than the wages of the father and the son.

"The rule is well established that all reasonable favorable inferences must be drawn from the evidence to support the findings of the commission. This rule has been so often declared that no authorities need be cited to support it. Applying the rule to the facts in evidence, we believe that although no witness specifically testified that the wages of the son were necessary to support the family, it is not an unreasonable inference to say that the $13 per week wages of the father were insufficient to support the family and that it was necessary for the son to contribute all of his wages ($15 per week) to accomplish that purpose.

"We are of the opinion that the evidence was amply sufficient to justify the finding of partial dependency of the claimants herein, and was also sufficient to warrant the award made."

The Workmen's Compensation Law provides that "if the injury causes death . . . the employer shall pay to the total dependents of the employee a single total death benefit, the amount" thereof to be determined by first computing sixty-six and two-third per cent "of the employee's average weekly earnings" and multiplying "such amount by three hundred;" that, such death benefit "shall be payable in installments," etc.; that amounts paid the employee as compensation for the injury "during his lifetime" shall be deducted; that "if there be a total dependent or total dependents, . . . no

death benefit shall be payable to partial dependents," Section 3319 (b) ; and that, "If there be partial dependents, and no total dependents, a part of the death benefit herein provided in the case of total dependents, determined by the proportion of his contributions to all partial dependents by the employee at the time of the injury, shall be paid by the employer to each of such dependents proportionately." [Section 3319 (c).] As stated, supra, it was agreed that if an award be made in favor of claimants that $15 shall be taken as "the employee's average weekly earnings." The commission ruled that claimants were partial dependents but rejected appellants' contention that the contributions of the employee should be arrived at by deducting the reasonable value of cost of his room, board, laundry and personal expenses and only the amount, if any, in excess thereof be considered as contributions. The commission then, applying the rule laid down in subdivision c, of Section 3319, supra, relating to the amount of award to partial dependents, made an award which in amount was the same that would be payable to total dependents. The sixty-six and two-thirds per cent of the weekly wages of $15 being $10 an award was made to claimants, as an entirety, for that amount per week for 300 weeks with burial expenses in the amount of $150, subject to a credit for $48.05 paid to the deceased employee prior to his death and subject also to a credit for $150 burial expenses paid by the insurer and a lien for attorney's fee. As to the contention which appellant renews on this appeal that in arriving at the contribution made by the employee the cost of room, board, laundry, etc., in the home should be deducted and only the amount in excess thereof, if any, be considered as a contribution it suffices to say that the Workmen's Compensation Law makes no provision for such deductions in making the computation. We have set out, supra, the provision of the statute specifying how the total amount of the death benefit is to be determined and that the portion of the total death benefit, thus computed, which partial dependents might receive should be determined by the proportion of the deceased employee's earnings which he had contributed to the support of such partial dependents. This brings us to the contention that the commission erred in allowing claimants the full amount of the death benefit that is $10 per week, being sixty-six and two-third per cent of $15 the average weekly earnings, for 300 weeks. This question was before the St. Louis Court of Appeals in Triola v. Western Union Telegraph Co., supra. In that case the claimants were the parents of the deceased employee who lived in the home with his father, mother, brothers and sisters and as a member of the family. The father earned $22.80 a week, a brother $21, and the deceased employee $15.24. The earnings of the

three, aggregating $59.04, a week were contributed to and constituted a common fund for the support of the family. The claimants were held to be partial dependents and it was contended that they were only entitled to receive a proportion of the total death benefit determined by the "percentage of their dependency upon the deceased employee" which, so computed, would be $786.39 instead of $3,048 allowed by the commission. In construing subdivisions b and c of Section 3319, supra, the Court of Appeals held that the part of the total death benefit a partial dependent "is to receive is determined by the proportion of" the deceased employee's contributions, "and that if he contributes three-fourths of his income to partial dependents such partial dependents would receive three-fourths of the total death benefit, or if he contributed all his earnings, the partial dependents would receive the total benefit, or the same amount total dependents would receive." The court applies the formula in that case as follows:

"The average weekly earnings of the deceased was $15.24. In order to arrive at the total death benefit as provided in paragraph (b) above set out, we would multiply two-thirds of the average weekly earnings by three hundred, which would amount to $3,048. Now to determine the amount which partial dependents would receive we would have to use the above total as a basis, and under our construction of paragraph (c), if deceased had contributed two-thirds of his income to his parents, these parents as such partial dependents would be entitled to receive two-thirds of the total death benefit, but where, as in this case, the partial dependents receive all of the employee's wages, then such claimants would be entitled to receive $3,048, or the same amount that total dependents would receive, because the act provides that if there be partial dependents and no total dependents, the part of the death benefit which is to be paid such partial dependents, proportionately, shall be determined by the proportion of his contributions to all partial dependents. Paragraph (c) when properly construed, we think, means that the part of the death benefit which partial dependents receive is determined by the proportion of the employee's wages which he contributes to such partial dependents, and not such amount as the total contributions bear to the total family income." Citing and following the Triola case the opinion of the Court of Appeals in the instant case rules this point, and we adopt same, as follows: "The evidence shows that there are no total dependents and that the deceased employee contributed all of his wages to the common fund which was used for the support of the entire family, consisting of himself, his father, mother, and maternal grandmother. We hold that the ruling and award of the commission were correct."

■ We also adopt the ruling of the Court of Appeals herein on the remaining assignments made by appellants as follows: "Appellants contend that the maternal grandmother of the deceased, being a partial dependent, is entitled to a proportionate part of the award and that, although ordinarily an employer is not concerned as to whom payments shall be made, yet, in this case, since the Statute of Limitations has barred the filing of a claim by the grandmother, the award of the commission should be set aside because it is not based on a finding of the extent of each claimant's dependency and did not take into consideration, and did not deduct the grandmother's portion of the benefits. This argument comes too late in this court. It was within the power of the employer to have brought in the grandmother as a party at the hearing before the referee, or before the commission. The employer did not see fit to do this and made no such point either before the commission, or in the circuit court. We believe appellants are not now in a position to complain of the award in this respect. [Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482, 485.]

■ "Appellants contend that it was error for the commission to make the award to claimants as an estate by the entirety. The amount of the award to be paid by appellants, and the time of the payment of the installments thereon are in no way affected by requiring payments to be made to the claimants jointly, and since payment thereof by appellants will extinguish their obligation, we see no just reason for complaint by them on this ground. [Clingan v. Carthage Ice & Cold Storage Co., 223 Mo. App. 1064, 25 S. W. (2d) 1084, 1086; Gendron v. Dwight Chapin & Co., 225 Mo. App. 466, 37 S. W. (2d) 486, 489.]"

The judgment of the circuit court is affirmed. *Hyde* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.