Charles DYKES and Mary Ethel Dykes, Respondents,

v.

Tony THORNTON, doing business as Thornton Sales and Auction Company and Bituminous Casualty Corporation, Appellants.

No. 44630.

Supreme Court of Missouri.

Division No. 2.

Sept. 12, 1955.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 10, 1955.

452

Glenn A. Burkart, Jack A. Powell, Mann, Mann, Walter & Powell, Springfield, R. Robert Cohn, Kansas City, for appellants.

John B. Newberry, Springfield, for respondents.

STOCKARD, Commissioner.

The Industrial Commission of Missouri rendered a final award, affirming the award of the Referee of the Division of Workmen's Compensation, in the amount of $10,030 in favor of respondent Charles Dykes for the death of Sammy Dykes. After an unsuccessful appeal to the Circuit Court of

Greene County, the employer and its insurer appealed to this court.

Respondents are the parents of Sammy Dykes who was unmarried and 19 years of age at the time of his death. The following facts were agreed to: Sammy was an employee of Tony Thornton, doing business as Thornton Sales and Auction Company, the Missouri Workmen's Compensation Law is applicable, Sammy's death resulted from an accident arising out of and in the course of his employment, the employer had notice of the accident, respondents filed their claim for compensation within the time prescribed by law, and Sammy's average weekly wage was $50. The Industrial Commission adopted in full the findings of fact, the rulings, conclusions of law and the reasons for the decision made by the referee, which, other than the matters mentioned above about which there was no dispute, were that Sammy's father, Charles Dykes, had no means whatever to support himself and was "totally dependent" upon Sammy for his support and maintenance; Sammy's mother, Mary Ethel Dykes, had net earnings of $60 per month; said amount was insufficient for her support; and she was "partially dependent" on Sammy for her support.

The correctness of these findings concerning dependency, and the award based thereon, are the only matters in issue.

Sammy's father, age 55, had no steady employment but he hauled "trash and things" and occasionally did some yard work in the summertime for which his earnings averaged about $5 per month. He testified that he was "disabled to work" because of "heart trouble and nervousness."

Sammy's mother, age 52, washed dishes in a restaurant for a time and received $20 per week and her meals. Then after being unemployed for approximately two months she obtained work as a maid at a hospital for a period of eight months where she was working at the time of Sammy's death. She received $100 per month but had to buy her meals, provide her uniforms and shoes, and pay for the laundry of her uniforms. The Industrial Commission found that her net

income from this employment was $60 per month.

When Sammy became 16 years of age, he worked driving horses and a tractor, but the employment was not regular. He obtained employment driving a truck for a firm identified as "Sur-Way" but was discharged because he was under the required age for that type of work. He later obtained employment, presumably after reaching the required age, with a firm identified as "Truck Sales." For several months previous to and at the time of his death, he worked for Tony Thornton, hauling livestock.

During all the employments above mentioned, Sammy lived at home with his parents. His mother handled all the finances of the family. When Sammy worked at odd jobs before he started driving a truck he gave his mother all of his earnings except what he used to go to the picture show. In answer to the question of how much money Sammy gave her when he worked for Sur-Way, his mother testified that "he gave me all he didn't use for skating and show(s), had a car, for gasoline." When Sammy bought the automobile, a 1941 Chevrolet, he and his mother signed the note. The automobile was used by his parents as a family car. When Sammy worked for Sur-Way he gave his mother $50 several times, and his mother stated that "we had to have it to live on." When asked how much money on an average he gave to his mother when he worked at Sur-Way, his mother stated, "Well, he averaged, anyway, when he worked at Sur-Way, gave me $50 a week, and a time or two gave me $100 to pay bills." His mother stated that when Sammy worked for Truck Sales, she did not know the exact amount he gave her, but "he was all the time giving me money at different times," and that all the money he did not use for his own expense "he gave it to me to use." She also testified that when Sammy worked for Tony Thornton, he "gave it (money) to me different times," and that he gave her money every week. The amount Sammy paid to his mother was not always the same, and she did not keep a record of it. She mingled the money received from Sammy with her

own earnings, and from this common fund she paid all the household bills, purchased groceries, paid for insurance and purchased clothing for Sammy's father.

Sammy was survived by one sister and three brothers, all older than he, all married and having homes of their own. Sammy's parents received no financial help from any of the married children.

The family home was in the name of Sammy's brother Lloyd, but there was a verbal agreement or arrangement that when the mortgage was paid, the title would be transferred to Sammy. The monthly payments of $20 on the mortgage were paid from the common fund consisting of the earnings of Sammy and his mother. Lloyd made no payments on the mortgage.

Section 287.490 RSMo 1949, V.A.M.S., provides that in workmen's compensation cases, "(t)he court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: * * * (4) That there was not sufficient competent evidence in the record to warrant the making of the award." In reviewing this case we have the duty to determine whether the Industrial Commission's award is "supported by competent and substantial evidence upon the whole record." Mo.Const. Art. V, § 22, V.A.M.S. We may not substitute our own judgment on the evidence for that of the Industrial Commission, but we are authorized to decide whether it could reasonably have made its findings and reached its result, upon a consideration of all the evidence before it, and to set aside its decision if clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Foster v. Aines Farm Dairy Co., Mo.Sup. 263 S.W.2d 421.

Section 287.240(4) RSMo 1949, V.A.M.S., provides that certain persons in the circumstances therein set forth shall be conclusively presumed to be totally dependent for their support upon the deceased employee, and in "all other cases" questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury. Neither of Sammy's parents is within the class conclusively presumed to be totally dependent. Therefore, the status of Sammy's parents as dependents is to be determined in accordance with the facts at the time of the injury to Sammy, which in this case is the same date as his death.

Section 287.240(4), RSMo 1949, V.A.M.S., also defines the word "dependent" to mean "a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury." The word "dependent" ordinarily means the need of aid or support, that is, not self-sustaining. A dependent person is one who has not the means of his own to support himself. A total dependent is one who has no means whatever to support himself. A partial dependent is one who has some means, but not sufficient for his support. Kennedy v. Keller, 225 Mo.App. 561, 37 S.W.2d 452; Ash v. Modern Sand & Gravel Co., 234 Mo.App. 1195, 122 S.W.2d 45; Gantner v. Fayette Brick & Tile Co., Mo.App., 236 S.W.2d 415. In the latter case the following statement was quoted with approval from 71 C.J. Workmen's Compensation Acts, § 273: "It is generally held that one is not totally dependent where a substantial part of the support comes from another source; but courts will not deprive applicants of the rights accorded total dependents merely because of minor considerations or benefits which do not substantially affect or modify the status of the applicants toward the deceased employee." Dependence within the meaning of the Workmen's Compensation Law does not mean absolute dependency for the necessities of life, but rather that the claimed dependent looked to and relied on the contributions of the employee, in whole or in part, as a means of supporting and maintaining himself. Shaffer v. Williams Bros., Inc., 226 Mo.App. 635, 44 S.W.2d 185. Also, see Larson's Workmen's Compensation Law, Vol. II, § 63.11.

Charles Dykes had substantially no income. By reason of the view we take of

this case we need not decide if his earnings of $5 per month were sufficient to affect his status as a total dependent. His principal support came from the common fund consisting of the contributions made by Sammy and his mother. Sammy's contributions to the common fund exceeded those of his mother, but her contributions were not inconsequential and did constitute a material part of the whole. There is no competent and substantial evidence in the record that Charles Dykes looked only to the contributions of Sammy for his support or that in fact his support, other than his meager earnings, came only from that source. From the record in this case there can be no question but that Charles Dykes looked to and relied on the common fund, consisting of the contributions made by both his wife and Sammy, for his support. A substantial part of the common fund was contributed by a person other than Sammy, and therefore, a substantial part of the support of Charles Dykes came from a source other than Sammy. For this reason Charles Dykes was not totally dependent on Sammy for his support. See Gantner v. Fayette Brick & Tile Co., supra.

The only income of the parents was that of the mother and the almost negligible earnings of the father. The family expenses exceeded these amounts. There is competent and substantial evidence that both parents were in need of aid and support, and that they both looked to and relied on the contributions which Sammy made from his wages. While the entire record does not support the finding that Charles Dykes was "totally dependent" on Sammy for his support, it clearly does support the finding that he was a "dependent" for the reason that he was "actually dependent for support * * * in part" upon Sammy's wages at the time of the injury resulting in death. The record also clearly supports the finding that the mother was "partially dependent" on Sammy for her support. Elihinger v. Wolf House Furnishing Co., 337

Mo. 9, 85 S.W.2d 11; Faccone v. Busy Bee Candy Co., Mo.App., 216 S.W.2d 112; Holland v. Missouri Electric Power Co., Mo. App,. 104 S.W.2d 277; Taucher v. Quality Dairy Co., Mo.App., 96 S.W.2d 658; Shaffer v. Williams Bros., Inc., 226 Mo.App. 635, 44 S.W.2d 185; Cunningham v. Management & Engineering Corp., 226 Mo.App. 215, 45 S.W.2d 899; Travelers' Ins. Co. v. Davis, Mo.App., 42 S.W.2d 945; Schmelzle v. Ste. Genevieve Lime & Quarry Co., Mo.App., 37 S.W.2d 482; Clingan v. Carthage Ice & Cold Storage Co., 223 Mo.App. 1064, 25 S.W.2d 1084; Triola v. Western Union Telegraph Co., 224 Mo.App. 258, 25 S.W.2d 518. The payments made by Sammy to his mother were for the support of both parents and not for any particular member. It is therefore immaterial that the money passed through the hands of the mother alone. Clingan v. Carthage Ice & Cold Storage Co., supra. It is also immaterial that some of the money he contributed was spent for items, such as food, which were partly used by Sammy. Elihinger v. Wolf House Furnishing Co., supra; Travelers' Ins. Co. v. Davis, supra.

The award in this case should have been computed as provided in Section 287.240(3) RSMo 1949, V.A.M.S., on the basis that both parents were partial dependents. See Faccone v. Busy Bee Candy Co., supra, and Tracey v. Acme Distributing Co., 236 Mo. App. 981, 160 S.W.2d 469. Therefore, the judgment of the circuit court is reversed and the cause is remanded with directions to said court to set aside its judgment and remand the cause to the Industrial Commission of Missouri for proceedings not inconsistent with the views here expressed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.