Charles DYKES and Mary Ethel Dykes, Respondents,

v.

Tony THORNTON, d/b/a Thornton Sales & Auction Company and Bituminous Casualty Corporation, Appellants.

No. 7621.

Springfield Court of Appeals.

Missouri.

May 3, 1957.

Glenn A. Burkart, Jack A. Powell, Mann, Walter, Powell & Burkart, Springfield, R. Robert Cohn, Kansas City, for appellants.

John B. Newberry, Springfield, for respondents.

McDOWELL, Presiding Judge.

This appeal is from a judgment rendered in Division II of the Circuit Court of Greene County, Missouri, on November 28, 1955, affirming the final award of the Industrial Commission of Missouri in the amount of $10,000 in favor of respondents for the death of Sammy Dykes.

Respondents are the parents of Sammy Dykes, who was unmarried and 19 years of age at the time of his death. The following facts were agreed to: Sammy Dykes was an employee of Tony Thornton, d/b/a Thornton Sales and Auction Company, the Missouri Workmen's Compensation Law is applicable, Sammy's death resulted from an accident arising out of and in the course of his employment, the employer had notice of the accident, respondents filed their claim for compensation within the time prescribed by law, and Sammy's average weekly wage was $50.

This case was tried before Referee, Leonard E. Newton, of the Division of Workmen's Compensation, who issued an award in favor of deceased's father, respondent Charles Dykes, in the amount of total death benefits, $10,000 plus $30 medical expense. The Referee also held that Mary Ethel Dykes, mother of deceased, was a partial dependent but she, of course, received no pecuniary benefits from the award because of the finding of total dependency on the part of her husband.

Appellants appealed to the Industrial Commission which affirmed the award of the Referee. They then appealed to the Circuit Court of Greene County, Division II, which affirmed the final award of the Industrial Commission. Appeal was taken from the judgment of the Circuit Court to the Supreme Court where the cause was reversed and remanded with instructions that the Circuit Court remand the cause to the Industrial Commission for the reason that the record did not support a finding of total dependency on the part of the father but did support a finding of partial dependency on the part of both respondents. Dykes v. Thornton, Mo.Sup., 282 S.W.2d 451.

Upon remand, the Industrial Commission rendered a second final award, finding that respondents were both partial dependents as directed by the Supreme Court, and further found:

"We further find that employee was 19 years of age, unmarried, and unemancipated, living with and under the control of his parents, Charles Dykes and Mary Ethel Dykes.

"We further find that on the date of accident, claimant, Charles Dykes had substantially no income, and that his principal support came from the common fund consisting of the contributions made by employee and his mother, Mary Ethel Dykes; that the claimant Mary Ethel Dykes, mother of employee, had net earnings of $60.00 per month, and that said amount was insufficient for her support; and that, therefore, the said Charles Dykes and Mary Ethel Dykes were partially dependent on employee for their support.

"We further find, as held by the Supreme Court, that employee's mother, Mary Ethel Dykes, claimant herein, * * * handled all the finances of the family and that employee 'turned over' to his father and mother his entire earnings to a common fund, out of which household bills, mortgage payments and utilities were paid, using only so much of it as was necessary for amusements, gasoline for family car,

and clothing. Faccone v. Busy Bee Candy Co., Mo.App., 216 S.W.2d 112. We also find, as held in the opinion of the Supreme Court, that employee's mother 'mingled the money she received from Sammy with her own earnings, and from this common fund she paid all the household bills, purchased groceries, paid for insurance and purchased clothing for Sammy's father.' And we therefore find and conclude that the claimants, the father and mother of employee, are, as partial dependents, entitled to the total death benefit provided by law. Faccone v. Busy Bee Candy Co., supra."

'From this final award of the Industrial Commission, appeal was taken to the Circuit Court of Greene County where it was heard in Division II and affirmed.

The cause was appealed again to the Supreme Court and by that court transferred to the Springfield Court of Appeals for want of jurisdiction.

The record shows deceased, at the time of his death, was living with respondents at 2440 Prospect, Springfield, Missouri.

Sammy's father, age 55, had no steady employment but hauled "trash and things" and occasionally did some yard work in the summertime for which his earnings averaged about $5 per month. He testified that he was "disabled to work" because of "heart trouble and nervousness".

Sammy's mother, age 52, washed dishes in a restaurant for a time and earned $20 per week and her meals. That after being unemployed for approximately two months she obtained work as a maid at a hospital for a period of eight months, where she was working at the time of Sammy's death. She received $100 per month but had to buy her meals, provide her uniforms and shoes, and pay for the laundry of her uniforms. The Industrial Commission found that her net income from this employment was $60 a month.

When Sammy became 16 years of age, he worked driving horses and a tractor, but the employment was not regular. He

obtained employment driving a truck for a firm identified as "Sur-Way" but was discharged because he was under the required age for that type of work. He later obtained employment, presumably after reaching the required age, with a firm identified as "Truck Sales". For several months previous to and at the time of his death, he worked for Tony Thornton, hauling livestock.

During all the employments above mentioned, Sammy lived at home with his parents. His mother handled all the finances of the family. When Sammy worked at odd jobs before he started driving a truck, he gave his mother all his earnings except what he used to go to the picture show. In answer to the question of how much money Sammy gave her when he worked for Sur-Way, his mother testified that "he gave me all he didn't use for skating and shows, he had a car, for gasoline". When Sammy bought the automobile, a 1941 Chevrolet, he and his mother signed the note. The automobile was used by his parents as a family car. When Sammy worked for Sur-Way he gave his mother $50 several times, and his mother stated that "we had to have it to live on". When asked how much money on an average he gave to his mother when he worked at Sur-Way, his mother stated, "Well, he averaged, anyway, when he worked at Sur-Way, gave me $50.00 a week, and a time or two gave me $100 to pay bills." His mother stated that when Sammy worked for Truck Sales, she did not know the exact amount he gave her, but "he was all the time giving me money at different times," and that all the money he did not use for his own expense "he gave it to me to use". She also testified that when Sammy worked for Tony Thornton, he "gave it (money) to me different times", and that he gave her money every week. The amount Sammy paid to his mother was not always the same, and she did not keep a record of it. She mingled the money received from Sammy with her own earnings, and from this common fund she paid all the household bills, purchased groceries, paid for insurance and purchased clothing for Sammy's father; that the money was given her on particular occasions to make payments on bills. She testified she didn't buy groceries by the week. She said "I bought them every two weeks when Sammy got his check". She said she didn't know whether she could state how much she spent each two weeks for groceries but said "sometimes it would be $50.00 and sometimes be $60.00 when we would get them every two weeks, and about every night we would go to the store and get something besides the two weeks—me and Sammy would go to the store". She testified Sammy had no bank account.

Sammy was survived by one sister and three brothers, all older than he, all married and having homes of their own. Sammy's parents received no financial help from any of the married children.

The family home was in the name of Sammy's brother, Lloyd, but there was a verbal agreement or arrangement that when the mortgage was paid, the title would be transferred to Sammy. Monthly payments of $20 on the mortgage were paid from the common fund consisting of the earnings of Sammy and his mother. Lloyd made no payments on the mortgage. The monthly expenses of the family group were, groceries $120; gas and electricity $3; water $1.60; furniture payments $15; clothing (including cleaning) $20.

The only issue presented to this court is contained in appellants' second allegation of error, to-wit: "The finding of the Industrial Commission that deceased contributed substantially all of his earnings to respondents is neither warranted nor supported by substantial or sufficient competent evidence, and is against the overwhelming weight of the evidence."

The duty of this court in determining such issue is clearly stated in Dykes v. Thornton, Mo.Sup., 282 S.W.2d 451, 454 (1 & 2) as follows:

"Section 287.490 RSMo 1949, V.A.M.S., provides that in workmen's compensation cases, '(t)he court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:   *  *  *  (4) That there was not sufficient competent evidence in the record to warrant the making of the award.' In reviewing this case we have the duty to determine whether the Industrial Commission's award is 'supported by competent and substantial evidence upon the whole record.' Mo. Const. Art. v, § 22, V.A.M.S. We may not substitute our own judgment on the evidence for that of the Industrial Commission, but we are authorized to decide whether it could reasonably have made its findings and reached its result, upon a consideration of all the evidence before it, and to set aside its decision if clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Foster v. Aines Farm Dairy Co., Mo.Sup., 263 S.W.2d 421." Brown v. Krey Packing Co., Mo.App., 271 S.W.2d 234, 237(2–4); Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 819(2) and authorities cited therein.

In the Dykes case, which was a former appeal on the record in the instant case, the Supreme Court reversed the trial court's judgment affirming the Industrial Commission's finding that Charles Dykes was a total dependent. In this opinion the court stated that both Charles Dykes and his wife were partial dependents of the deceased and held that the Industrial Commission's award should have been computed as provided in section 287.240 (3) RSMo 1949, V.A.M.S., on the basis that both parents are partial dependents, (citing Faccone v. Busy Bee Candy Co., Mo.App., 216 S.W.2d 112, and Tracey v. Acme Distributing Co., 236 Mo.App. 981, 160 S.W.2d 469.

·Section 287.240(3) RSMo 1949, V.A.M. S. reads:

"If there be partial dependents, and no total dependents, a part of the death benefit herein provided in the case of total dependents, determined by the proportion of his contributions to all partial dependents by the employee at the time of the injury, shall be paid by the employer to each of such dependents proportionately."

Our courts have interpreted this section of the statute to mean that the part of the death benefits which partial dependents receive is determined by the proportion of the employee's wages which he contributes to such partial dependents. A thorough discussion of the statute is found in Triola v. Western Union Telegraph Co., 224 Mo.App. 258, 25 S.W.2d 518, 519(1), wherein the court stated:

"*  *  *  Second, that the part a partial dependent is to receive is determined by the proportion of his contributions, and that if he contributes three-fourths of his income to partial dependents, such partial dependents would receive three-fourths of the total death benefit, or if he contributed all his earnings, the partial dependents would receive the total death benefit, or the same amount the total dependents would receive.  *  *  *"

This rule of law was followed in Gantner v. Fayette Brick & Tile Co., Mo.App., 236 S.W.2d 415, 418(4–5); Elihinger v. Wolf House Furnishing Co., 337 Mo. 9, 85 S.W. 2d 11, 16; Tracey v. Acme Distributing Co., 236 Mo.App. 981, 160 S.W.2d 469; Faccone v. Busy Bee Candy Co., Mo.App., 216 S.W.2d 112, 117.

In Tracey v. Acme Distributing Co., supra, 160 S.W.2d at page 473, the court stated:

"*  *  *  It is also clear that subsection (c) was intended as the sole method of providing for *apportioning* and *distributing* the death benefit to partial dependents and has nothing whatsoever to do with the method of computing the *amount* of such single total death benefit although

the amount thereof constitutes the fund out of which partial dependents are to be paid 'proportionately' in accordance with the 'proportion of his contributions to all partial dependents by the employee'."

The statutory method of computing the award of partial dependents has been before the courts of last resort in this state many times as shown by the authorities cited and quoted from in this opinion. Our courts have held that the statute is the sole method for apportioning and distributing death benefits to partial dependents; that the part a partial dependent is to receive is determined by the proportion of the employee's wages which he contributes to such partial dependent.

Appellants, in their brief, contend that the Supreme Court in its opinion in the former appeal of this case (reported in 282 S.W.2d 451) clearly indicated that the total amount of death benefits should not be awarded to partial dependents. An examination of the opinion does not justify such conclusion. The only issue passed on in that opinion was that respondents were partial dependents and the Industrial Commission should have computed the award as provided in section 287.240 (3) on the basis that both respondents were partial dependents.

Appellants, in their brief, leave the impression that the decision in the Faccone v. Busy Bee Candy Co., supra, and that in Tracey v. Acme Distributing Co., supra, are in conflict. We do not so find. The law is well settled that the appellate courts must decide each case upon the particular facts of that case. In the Faccone case, the deceased contributed all of his earnings which went into a common fund made up by the different dependents and used for their common support. In the Tracey case, the deceased contributed $12 per month out of his monthly earnings of $25.24 to the support of his brother. The court held that

under the facts the award should have been 12/25.24 or 47.54% of the total death benefits. In reaching this conclusion the court quoted from Triola v. Western Union Telegraph Co. case, supra, which announced the rule that in arriving at the percent of the total benefits that partial dependents are entitled, two factors are observed, namely, the proportion of the deceased's wages contributed to such partial dependent and the total amount of the deceased's income or wages.

The Industrial Commission, in the instant case, awarded the total death benefits to respondents, partial dependents. It found that the deceased employee turned over to his mother his entire earnings, which went into a common fund, out of which household bills, mortgage payments and utilities were paid.

It is the contention of appellants that the evidence does not warrant the finding that deceased employee contributed all of his earnings to the support of respondents, and, therefore, the award of the Industrial Commission is neither warranted nor supported by substantial competent evidence and is against the overwhelming weight of the evidence. Appellants say that the only amount of earnings that the deceased actually contributed for the support of such partial dependents could be used in arriving at the proportion of the total death benefits partial dependents could recover.

The evidence in the case is undisputed. The money contributed by deceased for the support of the family, together with the $60 net earnings of the mother, went into a common fund, out of which household and living expenses were paid, including $20 payment made on the indebtedness on the home, where they lived, and clothing for the father. These household expenses included those of deceased.

In determining whether the Industrial Commission could have reasonably made its finding and reached the conclusion

it did reach, upon consideration of all of the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence in the whole record. Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627; Francis v. Sam Miller Motors, Mo.Sup., 282 S.W.2d 5, 12.

The evidence is undisputed that the deceased, Sammy Dykes, did not contribute all of his earnings to the common fund, from which his mother, respondent, paid the family expenses; that the monthly earnings of deceased were $216.67 based on the average weekly wage of $50.

The mother's testimony is that Sammy contributed all of his earnings to her, which were placed in a common fund, except money used for shows, skating, gasoline for the automobile, meals bought while working on the road, and clothing. She made an estimate of the family expenses which amounted to $159.60 and testified she paid monthly payments of $20 out of the fund on the indebtedness on the home where they lived. She was unable to testify that there were no other expenses Sammy might have paid. She did not know of any other expenses.

The Industrial Commission, from this evidence, found that the deceased contributed all of his earnings to his mother, which went into a common fund from which fund the mother paid all the household bills, and therefore respondents were entitled to the total death benefits provided by law. The Commission's opinion was based upon the law as declared in Faccone v. Busy Bee Candy Co., supra.

Admittedly, the contributions of the deceased son and that of his mother were mingled into a common fund from which

household bills, groceries, insurance and clothing for Sammy's father were paid, including the payments on the house. To that extent, the facts in the instant case are similar to the record facts in the Faccone case, with this difference. In the Faccone case, all of the earnings of the deceased employee were turned over to and became a part of a common fund which were used by the mother for the support and maintenance of all of the dependents. In that case the mother testified that only $10 out of the weekly earnings of $30 of the deceased was used for running the house; that the balance went for car fare, lunch money, amusements, clothing, sickness and all other expenses of the family and the balance, if any, from the common fund, was used by the members of the family as they needed it. She stated "we all pooled it together". [216 S.W.2d 115.] The court said:

"* * * But where, as in this case, the employee contributed his total earnings to a common fund made up from the contributions of the working members of the family, the rule is different." The court allowed the partial dependents the total death benefits.

We do not agree with the Commission that the findings in the Faccone case are controlling in the instant case, for the reason that there is not substantial competent evidence to support the findings of the Commission that the deceased, Sammy Dykes, contributed his entire earnings to a common fund. In fact, the evidence clearly shows he did not contribute his entire earnings to a common fund and it fails to show any facts from which reasonable inferences might be drawn by the Industrial Commission that the deceased did contribute substantially his entire earnings to such common fund.

Respondents cite Triola v. Western Union Telegraph Co., supra, and Elihinger v. Wolf House Furnishing Co., supra, to support the findings of the Commission. We have quoted from these cases in this

opinion. They follow the correct interpretation of the statute and do not support respondents' contention.

Under point III in respondents' brief, they state: "The fact that deceased employee retained a portion of his money for his own expenses does not prevent this case from falling within the doctrine of the cases cited under point No. II."

We have passed upon the cases cited under point II. Under point III, however, the question as to whether the proportion of an unemancipated minor's wages expended upon his own necessity may be held to be a contribution to the dependent parents under the theory that the minor is paying an obligation which the parents themselves had, is raised. Respondents, in their argument, stated that this question has never before been raised in Missouri. To support this theory of the case, respondents cite Larson on Workman's Compensation, Vol. II, § 63.22, p. 107, which reads:

"* * * The relation of dependent parent to minor child is a rather complex one legally, since the parent initially has the legal right to take the minor son's earnings, and at the same time has a legal obligation to support this same minor son. In a sense, the total income needed by the parent to live and meet his obligations includes the sum needed to support his son. If the son, then, gives his earnings to the parent, the parent is to that extent dependent on the son's aid in meeting the parent's own obligation to the son. The fact that the parent takes the son's earnings as of legal right does not make the parent any the less dependent on them.

"On the same reasoning, parents may be dependent on an unemancipated minor when the minor spends all his earnings on his own requirements, or even costs more to support than the earnings he brings home, since, to the extent that he does contribute, he aids his parents in discharging a legal obligation to himself."

In other words, it is contended by respondents that the parents were obligated, under the law, to furnish the deceased, minor son, money for shows, skating, to buy his clothing and food while working on the road, and gasoline for the family car, and, therefore, when the son made these payment he, in fact, contributed that money to respondents for the reason that he reduced their obligation.

To sustain this theory Harvey v. Rocklin Mfg. Co., 237 Iowa 1058, 24 N.W.2d 402, is cited by respondents. This case was decided under § 85.42 of the Iowa Code 1946 § 1402, Code of 1939, I.C.A. § 85.42, provides in part: "* * * The following shall be conclusively presumed to be wholly dependent upon the deceased employee: * * *

"3. A parent of a minor who is receiving the earnings of the employee at the time when the injury occurred. * * *"

On page 403(1) of 24 N.W.2d in the Harvey case, the court made this statement: "The Opinion and Decision of the Commissioner points to undisputed evidence that decedent used his earnings from appellant-employer for his school necessities, clothing, Christmas gifts for members of the family, entertainment, and spending money, and finds that the parents were relieved of these various items of expense and hence received the full benefits of the deceased minor's earnings. Since these findings of fact are supported by sufficient competent evidence they are conclusive."

This same holding is found in Brandhorst v. Galloway Co., 231 Iowa 436, 1 N.W.2d 651; Littell v. Lagomarcino Grupe Co., 235 Iowa 523, 17 N.W.2d 120. Under these authorities, it is held that the support of a minor was an obligation of the parents and if the deceased minor's earnings were so applied by said minor as to relieve the parent in part from such support it made no difference whether the parent received such earnings directly through the employer or indirectly through the son, provided the

parent actually received the benefit thereof. The court stated on page 403 of 24 N.W.2d of the Harvey case, "Under the quoted part of the statute appellees are conclusively presumed to have been wholly dependent upon decedent. Hence the facts found by the Commissioner support the award."

Our statute does not contain the provision found in the Iowa statute herein quoted. Under section 287.240(4) RSMo 1949 V.A.M.S., cited in appellants' brief, it is provided what persons shall be conclusively presumed to be total dependents for support upon a deceased employee. Under subsection (b) of subd. 4, it is provided that a natural child under the age of eighteen years is conclusively presumed to be totally dependent for support upon the parent legally liable for such support or with whom he is living at the time of the death of such parent. The statute states "In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury, and in such other cases, if there is more than one person wholly dependent the death benefit shall be divided equally among them."

So, under our statute, the conclusive presumption contained in the Iowa statute is not applicable and the authorities cited by respondents do not aid us in a proper interpretation of the Missouri statute herein involved.

Air Castle v. Industrial Commission, 394 Ill. 62, 67 N.E.2d 177, and Chicago, Wilmington & Franklin Coal Co. v. Industrial Commission, 303 Ill. 540, 135 N.E. 784, are cited and relied upon by respondents to support the findings of the Industrial Commission in the instant case. In the Air Castle case, the decision is based upon the Illinois Workmen's Compensation Act, S.H.A. ch. 48, § 138.1 et seq. The sole question involved in that case was whether the parents of the deceased minor were, at the time of his death, partial dependents.

The Commission's award of partial dependency of the parents to the extent of 27.32% of dependency was upheld. The court stated "A child contributes to the support of his parents, within the purview of the Workmen's Compensation Act, when he contributes a substantial sum to the support of the family, although this sum is less than the actual cost of his support and maintenance where the child is a minor or is in a position to demand legal support, as here, from his parents." [394 Ill. 62, 67 N.E.2d 180.]

It was contended by the defendent in error that the contribution made by the minor did not exceed the cost of his clothes and spending money allotted to him, and that his contributions, therefore, could not have been used and relied upon by his parents in defraying family expenses for the reason no money was left from his contribution which could be devoted to this purpose. The court held that the father had turned over money to his wife and that the son, William, had also contributed money to the common fund, which were comingled and it could not be said that the deceased's earnings were used solely for his own personal needs. This case, in no way, is in conflict with the rulings of our Supreme Court on the same question.

In Dykes v. Thornton, supra, 282 S.W.2d at page 455, the Supreme Court said "It is also immaterial that some of the money he contributed was spent for items, such as food, which were partly used by Sammy". So the decision in the Illinois court is not in conflict with the holdings of the Missouri court and, in no way, supports respondents' contention.

In the Chicago, Wilmington & Franklin Coal Co. case, there were two questions for review. First, dependency, and, second, did the action arise out of and in the course of the employment of the deceased? Neither of such questions are before this court for judgment. However, on page 786 of 135 N.E. of the opinion, the court stated:

"A child contributes to the support of its parents, within the meaning of the Compensation Act, when it contributes a substantial sum to the support of the family, although this sum is less than the actual cost and expense of its support and maintenance, where the child is a minor or is in a condition to demand legal support from its parent." This case, likewise, was decided under the Workmen's Compensation Act of Illinois and is of little assistance to us in determining the rights of respondents under the Missouri Workmen's Compensation Act, which is the sole method of providing for apportioning and distributing the death benefits to partial dependents.

The St. Louis Court of Appeals in Triola v. Western Union Telegraph Co., supra, 25 S.W.2d at page 520, interpreting the Missouri statute stated "A reference to the compensation acts of other states is of little or no benefit to us, because we have been unable to find an identical provision in the act of any other state."

That applies to the cases cited by respondents herein. The statutes under which the decisions cited were based are not identical statutes to the Missouri Act, and, therefore, are of little value in determining the issue involved in the instant case.

■ We think the proper interpretation of the Missouri statute is that in apportioning and distributing death benefits to partial dependents, what a partial dependent is to receive is determined by the proportion of the employee's wages which he contributes to such partial dependent; that there are two factors involved, namely, the proportion of deceased's wages contributed to such partial dependent and the total amount of the deceased's income or wages.

■ We find from the whole record that the Industrial Commission's findings that deceased contributed substantially all of his earnings to respondents is unsupported by substantial and competent evidence and is

clearly contrary to the overwhelming weight of the evidence. Therefore, the judgment of the Circuit Court is reversed and the cause remanded with directions to said court to set aside its judgment and remand the cause to the Industrial Commission of Missouri for proceedings not inconsistent with the views herein expressed.

STONE and RUARK, JJ., concur.